THE NEW JERSEY INTERSTATE BRIDGE AND TUNNEL COMMIS-
SION et al.

*v.*

THE CITY OF JERSEY CITY et al.

[Decided July 13th, 1922.]

1. Where the Interstate Bridge and Tunnel Commission, in conjunc-
tion with the State of New York, contracted for the construction of two
tunnels under the Hudson river, the contractor was not obliged to com-
ply with the building code of the city in which part of the work was
being constructed, as such code did not require compliance by the state,
for the powers of municipalities may be abridged by the state.

2. Statutes in derogation of sovereignty are strictly construed in favor
of the state, and are not permitted to divest the state of any of its pre-
rogatives unless such intention is clearly expressed.

3. The control of highways by municipalities is subject to paramount
control by the state.

4. The state is immune from taxation by a municipality because taxes
so laid would require other taxation for the purpose of raising money for
their payment.

5. The fact that a contract made by the state for the construction of
a public work required the contractor to comply with the ordinances of a
named city did not authorize that city to require compliance with such
ordinances, as the statute permitting a third party to sue on a contract
is limited to the class intended to be benefited by the contract.

On application for an injunction.

*Mr. Emerson Richards,* deputy attorney-general, for the
motion.

*Mr. Thomas J. Brogan,* for Jersey City, *contra.*

WALKER, CHANCELLOR.

Chapter 49 (*P. L. 1918*) is "An act to provide for the ap-
pointment of an Interstate Bridge and Tunnel Commission and

CASES IN CHANCERY, 1922. 551

*93 N. J. Eq.*   N. J. Inter. Bridge & Tun. Com. *v.* Jersey City.

to define its powers and duties," and provides, *inter alia,* that the commission thereby created shall have such duties in connection with the providing of interstate bridges and tunnels as should from time to time be conferred upon it by the legislature, and should have all the powers appropriate and necessary for the performance of such duties.   Chapter 50 (*P. L. 1918*) is an act to extend the system of highways in the state and provides for the construction, maintenance and operation of bridges and tunnels across the Delaware and Hudson rivers, or either of them.   This latter act authorizes the bridge and tunnel commission to make plans, specifications, &c., for the construction of a bridge or tunnel across the Hudson river in co-operation with .the city or State of New York, and to enter into the necessary agreements or contracts with both states for the construction of the tunnel, and to enter into the necessary contract for such construction either in its own name or in the name of the state, or both, with full power in the name of the state to acquire by purchase or condemnation all lands, or rights or interests in lands, within the state which may be necessary for the construction of such tunnel.   The States of New Jersey and New York, pursuant to the authority vested in them respectively, entered into a contract with Booth & Flynn, Ltd., for the construction of two tunnels between Jersey City and New York City.   The magnitude of the work is demonstrated by the fact that the contract price is $12,132,100.50, and the time of completion of the work is fixed as thirty-six months from June 25th, 1922.   In pursuance of this contract a large amount of materials have been purchased by the contractor, subcontracts entered into with divers persons, and a large amount of materials assembled for the prosecution of the work at a point in the Erie railroad yards in Jersey City.   Title to the land required is vested in the State of New Jersey, which land is to be used during the construction of the tunnel, and afterwards as a plaza for an approach thereto.   The contractor, pursuant to the terms of the contract and upon notice from the chief engineer of the commission, entered upon the afore-mentioned land of the State of New Jersey and began preparations to erect an air compressing plant necessary for the prosecution of the work, and while so

552        CASES IN CHANCERY, 1922.

N. J. Inter. Bridge & Tun. Com. v. Jersey City.    93 N. J. Eq.

engaged the officers, engineers and workmen of Booth & Flynn, Ltd., were stopped by police officers of Jersey City and prevented from prosecuting the work, for the given reason that it could not be proceeded with unless and until the contractor obtained a permit therefor from the city of Jersey City.

Upon filing the bill in this cause and the affidavits thereto annexed, from which the above facts are made to appear, an order was made on the mayor and the city commissioners of Jersey City, their officers, agents and employes, to show cause why they should not be enjoined and restrained from interfering with the bridge and tunnel commission and Booth & Flynn, Ltd., in the work of constructing the tunnel or in any manner obstructing, delaying or preventing the erection upon the state's premises of a power plant or other works, &c.; and they were enjoined in the meantime and until further order of the court.

There are no disputed facts. Counsel for the state contends that the work above mentioned is being done by the state in its sovereign capacity, and is not subject to interference in anywise by the municipality of Jersey City. This great work of constructing tunnels under the Hudson river is the work of the state itself, for the state, wherever it prosecutes any great governmental purpose, either in its own name or by and in the name of its appropriate agent, is the actor in carrying the particular purpose into execution. *Morris Canal* ads. *The State, 14 N. J. Law 411.* Counsel for the defendants admits this, but claims that even the sovereign state is bound to acknowledge the right of Jersey City to insist upon the contractor taking out a permit under its building code for the purpose of prosecuting the work in question. And he relies upon section 15 of the contract, which reads:

"15. In all operations connected with the works the contractor shall strictly comply with all ordinances of Jersey City and of the board of health and all laws of the State of New Jersey and of the State of New York which are applicable to, and control or limit in any way the actions of those engaged in the work or affect the materials entering into the work, or affect the methods and appliances used by the contractor in carrying out the work, and he shall further strictly comply with all other federal, state and municipal regulations applicable to the work, including the transportation of materials in and around the city and harbor of New York."

CASES IN CHANCERY, 1922.  553

*93 N. J. Eq.*    N. J. Inter. Bridge & Tun. Com. *v.* Jersey City.

Jersey City is not a party to the contract.

Municipalities are the creatures of the state and the powers given to them are always subject to be abridged or repealed by the sovereign who conferred them. See *Eastern Tel. Co.* v. *Public Utility Board, 85 N. J. Law 511.* The building code of Jersey City was of course enacted subject to the power of the state to modify or annul it at any time. And the state, in the act creating the bridge and tunnel commission and clothing it with power to provide for interstate bridges or tunnels, with all the powers appropriate and necessary for the proper performance of such duties, without any limitation as to municipal control, overrode that code to the extent of nullifying its provisions so far as they required compliance with them by the state.

Statutes in derogation of sovereignty, such as those conferring powers on corporations, are to be strictly construed in favor of the state, and are not permitted to divest the state or its government of any of its prerogatives, rights or remedies, unless the intention of the legislature to effect such object is clearly expressed in the statute. *36 Cyc. 1177.* No public right can be taken away by mere inference or legal construction. *Jersey City* v. *City of Hudson, 13 N. J. Eq. 420.* It will be noticed that there is no saving clause in the act creating the bridge and tunnel commission, whereby its powers are to be affected by municipal ordinances. As already seen, this tunnel project is an extension of the state highway system, and the control of highways by municipalities is always subject to paramount control by the state itself. *Jersey City* v. *City of Hudson, supra; Barnes* v. *Essex County Park Commission, 86 N. J. Law 141.*

The power of Jersey City to enact its building code, which requires that for the erection of any building within the city limits a permit must be procured from the superintendent of buildings, was ordained in virtue of the charter of Jersey City granted by the state. In the absence of language in that charter to the effect that the state as a sovereign should be bound by ordinances passed in virtue of it, those ordinances did not affect the state. See *Trustees of Public Schools* v. *Trenton, 30 N. J. Eq. 667.* And the state could at any time override any such

charter provision, as acts derogatory from the power of subsequent parliaments bind not; because the legislature, being in truth the sovereign power, is always equal, always of absolute authority; it acknowledges no superior upon earth, which the prior legislature must have been if its ordinances could bind a subsequent parliament. *1 Bl. Com. 90.*

It was conceded on the argument that the fee payable to Jersey City for a permit to construct the tunnel in question, based, as required by the ordinance, on the value of the work to be done, would be several thousand dollars, and counsel for the city expressly stated that no exaction by way of fee would be made.

Attempts by a municipality to exact money from the state have always been defeated. Opinions emanating from the attorney-general's office in two cases, one to tax the state armory in New Brunswick, and the other an endeavor by Camden to levy a sewer assessment against the armory there, held such impositions to be invalid. The reason why the state is immune from taxation by a municipality is because taxes so laid would require other taxation for the purpose of raising money for their payment. See *Trustees, &c.,* v. *Trenton, 30 N. J. Eq. 667, supra.* Even if Jersey City is willing to forego the collection of a building permit fee, that could not operate to give vitality to an ordinance invalid against the state.

A case in the supreme court, whose doctrine is quite pertinent to the case at bar, is that of *Styles* v. *Long Co., 67 N. J. Law 413,* wherein it was held:

"Where a contract is made by a public corporation for the construction of a public work, and incidentally contains stipulations intended for the safety of the public, an individual, who sustains personal injuries by reason of the non-performance of such stipulation, does not bear such a relation to the contractor as will support an action of tort against the latter, based upon the mere violation of the contractual duty. The injured party is remitted to his action for breach of such duty [if any] as may be imposed upon the defendant aside from the contract."

Its application to the case at bar is this: The contract before me was made by the state for the construction of a public work,

CASES IN CHANCERY, 1922. 555

93 *N. J. Eq.*   N. J. Inter. Bridge & Tun. Com. *v.* Jersey City.

and incidentally contained stipulations intended for the safety of the public, Jersey City in particular; and that municipality, if it should sustain injury by reason of the non-performance of those stipulations, would not bear such relation to the contractor as would support an action against the latter based upon the mere stipulation of the contractual duty; but the city would be remitted to its action for breach of such duty as may be imposed upon the contractor by the ordinances of Jersey City, quite aside from the contract, to which the city is not a party. The statute permitting a third party not privy to a contract, and who has given no consideration therefor to sue thereon, is limited to those for whose benefit the contract is made, and does not extend to third persons who indirectly and incidentally would be advantaged by its performance. *Standard Power Corporation* v. *New England Casualty Co., 90 N. J. Law 570.* Now, Jersey City is not a party to the contract in question, and the contract was not made for its benefit; and Jersey City cannot enforce its ordinances against this work by reason of any provision in the contract to which it is a stranger.

While a sovereign state cannot be sued in its own courts without its consent, nevertheless, when it sues, the defendant is entitled to appropriate defences. *American Dock and Improvement Co.* v. *Trustees of Public Schools, 35 N. J. Eq. 181, 252.* See, also, *36 Cyc. 910.* It is true that Jersey City is not here suing on the stipulation contained in section 15 of the contract, but, being a defendant in the suit, it would be entitled to stand upon that section as defensive matter, if it constituted a valid defence in its hands; but, as shown, Jersey City, not being a party to the contract and which was not made for its benefit, it can neither sue on nor defend under it. Irrespective of the contract, it may have rights to enforce ordinances looking to safety in building operations, &c., in the prosecution of the work, but it cannot compel the State of New Jersey, or its agent, the contractor, to take out a permit for doing the work, or subject its agent and employes to inspection in the progress of the operation. And it is not to be presumed that the state will suffer this great work to be prosecuted without every reasonable precaution being taken for the safety of every one engaged in it, and of

the public as well, through inspection by its own officers, and otherwise.

The views above expressed lead to the making absolute of the order to show cause and the granting of a preliminary injunction.