DOUGLAS KING ET AL., APPELLANTS, V.
STATE OF NEBRASKA, APPELLEE.
KATHRYN E. CARRIGAN, PERSONAL REPRESENTATIVE OF THE
ESTATE OF JOHN G. CARRIGAN, DECEASED, APPELLANT, V.
STATE OF NEBRASKA, APPELLEE.
614 N.W. 2d 341

Filed July 21, 2000.   Nos. S-98-1009, S-98-1019.

James D. McFarland, of McFarland Law Office, and Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., for appellants Douglas King et al. and Kathryn E. Carrigan.

Don Stenberg, Attorney General, and John R. Thompson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Douglas King, together with other Nebraska State Patrol employees (the troopers), filed a lawsuit against the State of Nebraska alleging that the State's overtime policy violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. (1994). In a separate lawsuit, John G. Carrigan, a corrections lieutenant in the Nebraska Department of Correctional Services (Department), similarly claimed that the State's overtime policy violated the FLSA. The troopers and Carrigan (hereinafter collectively the appellants) moved for partial summary judgment, asking that the district court find in their favor on the issue of the State's liability and that the State's policies are willful violations of the FLSA. Carrigan also requested that the court find in his favor on the issue of whether he is an exempt employee under the FLSA.

The district court for Lancaster County denied the appellants' motions for partial summary judgment and dismissed their respective petitions for lack of jurisdiction based on the State's sovereign immunity. These appeals followed and have been consolidated for disposition. The question presented is whether the State has waived its sovereign immunity in suits brought to invalidate certain contractual provisions as violative of the FLSA. We hold that the State has not waived its sovereign immunity in the instant cases and, therefore, dismiss the appeals for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

### STATE PATROL TROOPERS

Appellant King and all other named plaintiffs in his suit are Nebraska State Patrol employees. In their first petition of December 10, 1996, the troopers alleged that State Patrol troopers were required to work overtime and that the State provided them with compensatory time off for overtime work instead of

cash overtime pay. The troopers further alleged that to keep compensatory time balances at a minimum, the State would unilaterally schedule time off for the troopers if the troopers themselves did not do so. The troopers alleged that as a result, compensatory time balances were reduced by the State's requiring involuntary use of compensatory time without monetary compensation. Additionally, the troopers claimed that for one or more of the troopers, the State would set off overtime hours worked against compensatory time used at the rate of an hour and a half compensatory time for each hour of overtime worked during the same pay period. As a result, the troopers' compensatory time banks were not increased even though they worked overtime without monetary compensation.

Further, the troopers alleged that three of the troopers were promoted within the last 3 years to the rank of lieutenant and were informed that they would be ineligible for overtime pay or for a compensatory time bank of accrued overtime. The troopers claimed that the State directed these three troopers to use all of their earned compensatory time banks within 1 year of their promotion or lose this earned time.

The troopers asserted that the State's unilateral policy of forcing them to use compensatory time violated 29 U.S.C. §§ 206 and 207. They alleged that the failure to compensate them for the forced use of compensatory time was a willful violation of these sections within the scope of 29 U.S.C § 255(a) (1994).

The troopers prayed for damages in the form of backpay for the prior 3 years, injunctive relief to enjoin the State from requiring the employees to schedule compensatory time off, liquidated damages equal to the amount of any backpay awarded, costs, attorney fees, and prejudgment interest. Additionally, the troopers asked the court to declare that the State's policies are unlawful and constitute a willful violation of 29 U.S.C. §§ 206 and 207 and that the lieutenants are eligible to earn overtime compensation.

The State filed a demurrer on December 16, 1996, asserting that the court lacked jurisdiction over the State or over the subject matter, since the State had not waived its sovereign immunity, that there was a defect of party defendant, and that the petition did not state facts sufficient to constitute a cause of action. The district

court overruled this demurrer on February 7, 1997, determining that the subject matter of the suit was an employment relationship between the troopers and the State, which was a contractual matter. The court concluded that the State had waived its sovereign immunity for actions arising from a contract, citing Neb. Rev. Stat. § 25-21,206 (Reissue 1995), and *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994).

The troopers amended their petition, with a few significant changes. Specifically, one individual was added to the list of troopers who were promoted to the rank of lieutenant and subject to the State's overtime policies. The troopers also alleged that § 10.5 of the labor contract between the State and the State Law Enforcement Bargaining Council, which governed the use of compensatory time, is null and void as violative of 29 U.S.C. §§ 206 and 207. The troopers also alleged that the State had retaliated and discriminated against several of them by taking actions in conjunction with its policies and procedures which denied these troopers the opportunity to work overtime, including regularly scheduled hours on holidays, in violation of 29 U.S.C. §§ 215(a)(3) and 216(b). In the troopers' prayer for relief, they requested that the court declare § 10.5 of the labor contract null and void as being in violation of federal laws, including 29 U.S.C. §§ 206 and 207.

### APPELLANT CARRIGAN

Appellant Carrigan was employed by the Department as a corrections lieutenant at the Nebraska Correctional Center for Women in York. Carrigan died during the pendency of this appeal, and his personal representative was substituted as the appellant. Similarly to the troopers, Carrigan alleged that he was required to work overtime and that the State provided him with compensatory time off for overtime work performed instead of cash overtime pay. To keep the compensatory time bank balances at a minimum, the State would unilaterally schedule time off for Carrigan if he did not do so, or would unilaterally decrease his compensatory time bank balance. As a result, Carrigan alleged that his compensatory time balance was reduced by the State, requiring involuntary use of compensatory time without monetary compensation, which he alleged was a

violation of 29 U.S.C. §§ 206 and 207 and was a willful viola-
tion of these sections within the scope of 29 U.S.C. § 255(a).
Carrigan prayed for damages in the form of backpay for the
prior 3 years, injunctive relief to enjoin the State from requiring
him to schedule compensatory time off, a declaration that the
State's policies are unlawful and constitute willful violations,
liquidated damages equal to the amount of any backpay
awarded, costs, attorney fees, and prejudgment interest.

On January 3, 1997, the State filed a demurrer to Carrigan's
petition, reiterating the grounds upon which it based its demur-
rer to the troopers' petition. This demurrer was also overruled on
February 7, as part of the same order overruling the demurrer to
the troopers' petition.

## SUMMARY JUDGMENT

The appellants moved for partial summary judgment on
March 24, 1998. These motions sought an order in their favor on
the issue of liability. On August 27, the district court overruled
the motions for partial summary judgment and dismissed the
appellants' petitions. The district court stated that its prior rul-
ings on the State's demurrers were incorrect and that these
actions seeking to subject the State to the FLSA provisions are
barred by sovereign immunity. The district court reasoned:

> The plaintiffs contend that the State has waived its
> sovereign immunity under NEB. REV. STAT. §25-21,206
> (Reissue 1995), citing *Hoiengs v. County of Adams*, 245
> Neb. 877, 516 N.W.2d 223 (1994). In *Hoiengs* the plain-
> tiffs claimed that the various counties had failed to make
> proper contributions to the retirement accounts of the
> employees in accordance with the applicable retirement
> statutes. The court found that the claims to retirement ben-
> efits by the public employees were contract rights and that
> the employees' expectations with respect to their pensions
> were protected by the law of contracts. Therefore, because
> the Legislature had provided in Section 25-21,206 that the
> State can be sued on any matter arising from a contract
> authorized or ratified by the Legislature, this constituted a
> waiver of sovereign immunity with respect to these retire-
> ment benefits.

Such is not the case here. The plaintiffs are not suing to enforce their contract with the State or to have it interpreted. Rather they seek to have portions of that contract invalidated as violative of the FLSA and to have the FLSA applied to the State of Nebraska. Although a contract is involved, clearly this is not a suit on a contract but a suit to subject the State to the FLSA. Such an action is barred by the doctrine of sovereign immunity in that there has been no waiver by the State.

The appellants timely appealed the dismissal of their petitions and the overruling of their motions for partial summary judgment.

The appellants filed a motion to consolidate their appeals, which was granted. We then granted the appellants' petition to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

The appellants allege that the district court erred (1) in finding that it lacked jurisdiction over the State in a suit to enforce provisions of the FLSA and (2) as a matter of law in denying the appellants' motions for partial summary judgment.

## STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *Custom Fabricators v. Lenarduzzi*, 259 Neb. 453, 610 N.W.2d 391 (2000); *Beachy v. Becerra*, 259 Neb. 299, 609 N.W.2d 648 (2000).

## ANALYSIS

### SOVEREIGN IMMUNITY: *ALDEN V. MAINE*

During the pendency of these appeals, but prior to oral argument, the U.S. Supreme Court decided *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). The Supreme Court's reasoning in *Alden v. Maine* will be examined in detail in order to explain why our review is limited to whether the State waived its sovereign immunity. In the *Alden* case, a group of probation officers filed suit in state court against their employer, the State of Maine, alleging that it had violated the

overtime provisions of the FLSA. The state trial court dismissed the suit on the basis of sovereign immunity, the Maine Supreme Judicial Court affirmed, and the Supreme Court granted certiorari.

In affirming the lower court's decision, the Supreme Court conducted an extensive historical analysis of the principles of sovereign immunity and the 11th Amendment. The Court stressed the importance of state sovereignty to the founders and stated that the text and history of the 11th Amendment suggest that Congress sought to restore the original constitutional design through its adoption. The Court reasoned that "sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." 527 U.S. at 713. Rather, "[t]he Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle." 527 U.S. at 728-29.

The Court then analyzed whether Article I gave Congress the power to subject nonconsenting states to private suits in their own courts. The Court stated, "In exercising its Article I powers Congress may subject the States to private suits in their own courts only if there is 'compelling evidence' that the States were required to surrender this power to Congress pursuant to the constitutional design." 527 U.S. at 730-31. The Court looked for this "compelling evidence" through an examination of history, practice, precedent, and the Constitutional structure.

The Court first rejected the notion that substantive federal law by its own force necessarily overrides the states' sovereign immunity; rather, "[w]hen a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States." 527 U.S. at 732. The Court then read the relevant history as an indication that the Constitution might not have been adopted "if it had been understood to strip the States of immunity from suit in their own courts and cede to the Federal Government a power to subject nonconsenting States to private suits in these fora." 527 U.S. at 743. The Court did not discover any instance where the early Congresses enacted statutes which purported to authorize suits against nonconsenting states in state courts.

The Court noted that it had "often described the States' immunity in sweeping terms, without reference to whether the suit was prosecuted in state or federal court." *Alden v. Maine*, 527 U.S. 706, 745, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). Finally, the Court reasoned that the principles of federalism and its concomitant respect for state sovereignty compel the conclusion that "States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation." 527 U.S. at 754.

The Court ultimately held that Congress did not have the power to subject nonconsenting states to private suits for damages in state courts. *Id.* Thus, the provision of the FLSA which purported to authorize private actions against a state in state courts without its consent was an unconstitutional abrogation of state sovereign immunity.

The Court then pointed out that sovereign immunity bars suits only in the absence of consent; states can consent to suits through the enactment of various state statutes or pursuant to the plan of the constitutional convention or by subsequent constitutional amendment. Additionally, the Court stated that sovereign immunity bars suits against states but not lesser entities. The Court then concluded that the State of Maine had not waived its sovereign immunity.

■ In light of *Alden v. Maine, supra*, the primary issue on appeal is whether the State has waived its sovereign immunity in these suits brought to enforce certain provisions of the FLSA. Our analysis begins with the relevant constitutional and statutory provisions. Article V, § 22, of the Nebraska Constitution provides, "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." This constitutional provision, however, is not self-executing and requires legislative action to waive the State's sovereign immunity. See, *Logan v. Department of Corr. Servs.*, 254 Neb. 646, 578 N.W.2d 44 (1998); *Riley v. State*, 244 Neb. 250, 506 N.W.2d 45 (1993).

The appellants urge that this requisite legislative action is found in § 25-21,206. In relevant part, § 25-21,206 provides: "The state may be sued in the district court of the county wherein the capital is situated *in any matter founded upon or*

*growing out of a contract,* express or implied, originally authorized or subsequently ratified by the Legislature, or founded upon any law of the state." (Emphasis supplied.)

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Sack v. State,* 259 Neb. 463, 610 N.W.2d 385 (2000); *Schrader v. Farmers Mut. Ins. Co.,* 259 Neb. 87, 608 N.W.2d 194 (2000). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Id.*

Statutes that purport to waive the State's sovereign immunity must be clear in their intent. *Woollen v. State,* 256 Neb. 865, 593 N.W.2d 729 (1999). They are strictly construed in favor of the sovereign and against the waiver. *Id.* See, also, *Hoiengs v. County of Adams,* 245 Neb. 877, 516 N.W.2d 223 (1994); *Wiseman v. Keller,* 218 Neb. 717, 358 N.W.2d 768 (1984). A waiver of sovereign immunity will only be found where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction. *Id.* Thus, our analysis of § 25-21,206 is guided by its plain language and the presumption against a waiver of sovereign immunity.

The plain language of § 25-21,206 clearly encompasses only those matters founded upon or growing out of a contract. Therefore, our analysis is governed by the language in the operative contracts. The labor contract in the troopers' case provides that the employees can accumulate up to 120 hours of compensatory time; when the balance exceeds 120 hours, employees are required to use the excess time within 6 months. If the employees fail or refuse to schedule the excess time off, they will be ordered to take compensatory time off as scheduled by their employer. In Carrigan's case, there are no contractual agreements between the Department and the lieutenants regarding the overtime compensation banks, as detailed in the deposition testimony of the Department's personnel administrator. Instead, the Department developed a policy relating to the use of the compensatory time banks.

Notably, the FLSA is not incorporated into either contract; rather, overtime provisions were constructed and policies were developed. The labor contract in the troopers' case contains absolutely no mention of the FLSA. Carrigan contends that the FLSA has been incorporated into his contract, because the applicable Nebraska Classified System Personnel Rules & Regulations refer to the FLSA. However, Carrigan's contract is not contained in the record, and we are, therefore, unable to determine if, and to what extent, the personnel rules are incorporated therein. Regardless, Carrigan's position is undermined by the personnel administrator's testimony that there are no contractual agreements between the Department and the lieutenants regarding the overtime compensation banks.

An examination of the record in the instant case reveals that the matters at issue in these suits are not "founded upon or growing out of" the employment contract with the State, but, rather, are matters involving rights created by federal law. The appellants' petitions demonstrate the nature of their actions, as they are brought "to address violations of the [FLSA]," and not rights arising from their contracts with the State. In other words, the appellants' suits seek to invalidate provisions of employment contracts based upon rights created by the federal FLSA; they are not suits based upon rights created by the contracts themselves.

Further, we are required to strictly construe any waiver of sovereign immunity. We cannot conclude that the State waived its sovereign immunity by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction for suits such as these, which bear only a tangential relation to a contract. See, *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994); *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768 (1984). The plain language and the requisite strict construction can dictate only one result: § 25-21,206 does not waive the State's sovereign immunity from a suit brought against it for alleged FLSA violations when the FLSA claims are not founded upon or growing out of the contracts themselves.

*Hoiengs v. County of Adams, supra,* and *Omer v. Tagg,* 235 Neb. 527, 455 N.W.2d 815 (1990), are inapposite to the case at

bar because the claims against the State in those cases arose out of the contracts. In *Hoiengs v. County of Adams,* the plaintiff brought suit on his own behalf and on behalf of others similarly situated, seeking a declaration that the defendant counties were required by the County Employees Retirement Act, Neb. Rev. Stat. § 23-2301 et seq. (Reissue 1991), to make additional contributions to their retirement systems. The system, as a state agency, asserted that it was immune from suit. We rejected its claim of sovereign immunity, reasoning that Hoiengs' claim arose from his right to retirement benefits by virtue of his employment by a county participating in the retirement system. We relied on *Halpin v. Nebraska State Patrolmen's Retirement System,* 211 Neb. 892, 320 N.W.2d 910 (1982), for the proposition that state retirement systems create contracts between the State and its employees who are members of the system. We then concluded that Hoiengs' retirement rights were contractual in nature and that the system had waived its sovereign immunity under § 25-21,206.

In *Omer v. Tagg, supra,* a retired State Patrol member sought to participate in a state employees' group health insurance program, pursuant to Neb. Rev. Stat. § 44-1620 et seq. (Reissue 1984) (now found at Neb. Rev. Stat. § 84-1601 et seq. (Reissue 1999)). The district court entered judgment for the retired employee, and the State appealed, alleging, inter alia, that the district court lacked jurisdiction because the State had not waived its sovereign immunity. We rejected this argument, noting that "the promises made at the time of employment were for compensation to be enjoyed at retirement and constituted a contract enforceable against the State" and that the State had waived sovereign immunity through § 25-21,206. *Omer v. Tagg,* 235 Neb. at 530, 455 N.W.2d at 817.

*Hoiengs v. County of Adams, supra,* and *Omer v. Tagg, supra,* are readily distinguishable from the case at bar because those cases both involve "matters founded upon or growing out of a contract." In those cases, both the County Employees Retirement Act and the Nebraska State Insurance Program, respectively, were deemed to be part of the operative contract. In the instant case, however, the appellants' claims are not "founded upon or growing out of [the] contract[s]" themselves, but, rather, are an

attempt to invalidate the contract and subject the State to the FLSA, which is a matter that is external to the bargained-for agreement between the parties. The appellants do not claim nor is there evidence before us that the State has breached any contractual provision by purportedly violating the mandates of the FLSA. Because the appellants' claims are not founded upon or growing out of their contracts with the State, § 25-21,206 is inapplicable and, consequently, does not waive the State's sovereign immunity for a suit for FLSA violations in this case. Thus, we conclude that the district court did not have jurisdiction over the State and properly dismissed the appellants' petitions.

### DENIAL OF PARTIAL SUMMARY JUDGMENT MOTION

The appellants also contend that the district court erred in denying their motions for partial summary judgment. Because we have determined that the district court was without jurisdiction over the State, it did not have jurisdiction to consider the merits of the appellants' motions for partial summary judgment. When a lower court does not have jurisdiction over the case before it, an appellate court also lacks jurisdiction to review the merits of the claim, issue, or question presented to the lower court. See, *Sack v. State*, 259 Neb. 463, 610 N.W.2d 385 (2000); *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999).

## CONCLUSION

*Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), dictates that we limit our review to whether the State has waived its sovereign immunity for a suit involving FLSA violations. The district court correctly reasoned that the instant lawsuits did not involve matters "founded upon or growing out of a contract," see § 25-21,206, but, rather, the suits were brought to subject the State to the FLSA. The presumption against waiver and the plain language of § 25-21,206 lead us to conclude that the State has not waived its sovereign immunity for these FLSA lawsuits, and therefore, the district court properly determined that it lacked jurisdiction. We consequently lack jurisdiction and dismiss the appeals.

APPEALS DISMISSED.

GERRARD, J., concurring.

Although I believe that the Court's federalism analysis in *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), disregards the accepted authority of Congress to bind states under the Fair Labor Standards Act and to provide for enforcement of federal rights in state court, see *Alden v. Maine, supra* (Souter, J., dissenting), I recognize that this court is compelled to adhere to the holding in *Alden*; therefore, I reluctantly concur in the judgment.