768 A.2d 1055

MICHAEL ALLEN, DAVID ABDUS–SABUR, TAJUDDIN ABUR–RAÓOF, LANIECE ALLISON–BROWN, JERRY ALSTON, RICHARD ANDERSON, RENEE ARVIN, RICHEY ASKEW, DANIEL ATES, JOE BAKER, SR., RAYMOND BALLESTER, HATAA BARAKA, TODD BARNETT, ANGELO BIANCHI, DAVID BLACKBURN, MAURICE BOATNER, DENNIS BOGDAN, REGINALDO BOSQUE, MILTON BOYD, LARRY BRANTLEY, JOHN BURNS, NATHANIEL BUSH, ELLEN BUTLER, EDDIE CANNON, PASQUALE CAPOZZOLI, JEROME CARROLL, YVETTE CARROLL, JOHN CASALINHO, GREGORY CASTILLO, CAPRICE CHAVES, HENRY CHERRY, LIZZIE MAE CHISLUM, JOANNE CLARK, CHRISTOPHER COATS, LEONEL COELHO, TIOWANDOLYNN COLEMAN, BEVERLY COLLINS, LANCE COLLINS, SHELBY COWANS, CELESTE CUNNINGHAM, MARLON CURTIS, ALEXANDER DALMIDA, PATRICIA DANIELS, BRUCE DAVIS, EDWARD DAVIS, JOHN DELGUERCIO, THOMAS DIXON, EVONNE DOCK, CARLTON EASTON, CLEVELAND EATMAN, SANDRA ELEY, FRANK EVARISTO, ANDRE FLEMING, DEBORAH FLUKER, DEBORAH FOSTER, ANDRE FRAZIER, FREDDIE FRAZIER, JR., JAMES FRAZIER, LLOYD FULLER, JR., BEN GAMBLE, DAVID GARRY, MARK GAUNT, ARTHUR RAY GIBSON, MICHAEL GILBERT, JOAN GILMORE, HARRY GONZALEZ, NELSON GONZALEZ, GAIL GOOD, GERALD GORDON, DAWN

GRANT, LUTHER GREGG, BRANDON GREGORY, ROBIN GRIER, GILVES GRRINGTON, PAMELA HAILSTORK, DAVID HAMMONDS, JAMES HAMILTON, BILLY HARRIS, MERRI HARRIS, JOSE HERNANDEZ, ANTHONY HIGH, DANA HINES, BENITA HOLMES, TIMOTHY HOUSE, EVA HUGUENIN, JANET HUNTER, DAVID JACKSON, LORRIE JACKSON, TERRANCE JACKSON, JOSE JIMENEZ, MANUEL JIMENEZ, DARRIS JOHNSON, MONIQUE JOHNSON–HOLLEY, DWAYNE JONES, JIMMIE JONES, KENNETH JONES, TOTSIAN JONES, ALTON JOYNER, STANLEY JUDSON, WILLIAM JUNGMAN, JAMES KENNEDY, MICHAEL KENNEDY, ROBERT KENT, EDWARD KITCHEN, JR., DARRELL KORNEGAY, KATHY LAMBERTH, LEONARD LAMBERTH, ANDRE LARKINS, ALVIN LEWIS, ANTHONY LINDSEY, CHRISTINE LINDSAY, ALBERT LOFTON, JAMES LOWERY, JOSE LUGARDO, STACEY MALLORY, ANDRE MANNING, TIMOTHY MAYE, BRIAN MCCALLUM, MARTA MCCLAIN, TONI MCCOY, CHANDAR MCDANIEL, BRIAN MCGILL, CHESTER MEGILL, GEORGE MIGNER, DERRICK MIKE, DAVID MILLER, MONICA MILLER, DONOVAN MITCHELL, LOUIS MORENA, DARRYL MORGAN, CLARK MORTON, WILLIAM NEALIS, CHARLES NEWSOME, BENJAMIN NEWTON, BEVERLY NOTTINGHAM, LAMONT NUTTER, MANUEL OLIVEIRA, MARQUIS OWENS, ANTONIO PEREIRA, RONNIE PERRY, DARWIN PHILLIPS, PEDRO POZO, SALAHUDDIN RABB, HAKIEM RANDALL, WILLIE RAYFORD, HAROLD REYNOLDS, DEBORAH REVIS, BRENDA RICHARDSON, HAROLD RICHARDSON, JASON RICHARDSON, MOLLY RICHARDSON, TIMOTHY RIGSBY, ANTHONY ROBERTS, DESIREE ROBERTSON, EMMANUEL RODRIQUEZ, LUIS ROSAS, JUDITH SCHLACHTER, GLORIA SCHWINGER, RUTH SAFFOLD, JAMES SANDERS, SHAWN SCOTT–THOMAS, MINNIE SMALL, CEDRIC SEYMOUR, LENORE SIMON, ANDRE SMITH, GARVEN SMITH, KENT SMITH, LEROY SMITH, CARLOS SOARES, JOSEPH SORBINO, EDWIN SOTO, GERALD SOWA, JANELLE SPEARMAN, JOSEPH SPOTSWOOD, JOHN STAFFORD, TIARE STEPHENSON, SEAN ST. PAUL, ALPHONSO STRAUSS, EDWARD SULLIVAN, ANTHONY SWEPSON, RICHARD TATTOLI, DEREK THOMAS, VINCENT THOMAS, GENARO THOMPSON, JEFFREY THOMPSON, PERNELL THOMPSON, LANGSTON TISDALE, RONALD TUCKER, CALVIN TURNER, TERRELL TURNER, LARRY TYSON, JOHN VATASIN, MOISES VAZQUEZ, WILLIAM VICK, SAMUEL WEBSTER, TYRONE WEBSTER, EDDIE WELDON, FREDRICK WHITE, BRIAN WILLIAMS, ERIC WILLIAMS, KENNETH WILLIAMS, JADA WILSON, HAROLYN WING–

NEBLETT, WILLIE WINNS, KECIA WRIGHT AND CARLTON YOUNG, ON BEHALF OF THEMSELVES AND ALL OTHER PERSONS SIMILARLY SITUATED, PLAINTIFFS–APPELLANTS, v. WILLIAM H. FAUVER, CHRISTINE TODD WHITMAN AND STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, DEFENDANTS–RESPONDENTS.

Argued February 13, 2001—Decided April 10, 2001.

*David Tykulsker*, argued the cause for appellants (*David Tykulsker & Associates*, attorneys).

*Patrick DeAlmeida*, Deputy Attorney General, argued the cause for respondents (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney; *Robert H. Stoloff*, Assistant Attorney General and *Mary C. Jacobson*, Former Assistant Attorney General, of counsel; *Todd A. Wigder*, Deputy Attorney General, on the brief).

PER CURIAM.

Plaintiffs are State corrections officers who seek incidental overtime wages under the Fair Labor Standards Act (FLSA), 29 *U.S.C.* § 201 to § 219, and New Jersey's Wage and Hour Law, *N.J.S.A.* 34:11–56a1 to –56a30. They filed this class action against the State, the Governor, and the Commissioner of Corrections, the latter two in their official capacities only.

The trial court dismissed both counts of plaintiffs' complaint, and the Appellate Division affirmed that judgment. The Appellate Division held that the Wage and Hour Law did not apply to the State because that statute does not include the State of New Jersey in the definition of "employer," *N.J.S.A.* 34:11–56a1(g), and also held that plaintiffs could not bring an action under the FLSA because the State had not waived its sovereign immunity and consented to suit under the FLSA. *Allen v. Fauver*, 327 *N.J.Super.* 14, 19–20, 21, 742 *A.*2d 594 (App.Div.1999). We affirm those determinations substantially for the reasons expressed in the Appellate Division's persuasive opinion and write only to elaborate on the FLSA issue.

I.

In *Seminole Tribe of Florida v. Florida*, 517 *U.S.* 44, 116 *S.Ct.* 1114, 134 *L.Ed.*2d 252 (1996), the United States Supreme Court

held that Congress does not have authority pursuant to the Commerce Clause of the United States Constitution to abrogate a state's Eleventh Amendment sovereign immunity and to require it to face suit under the FLSA in federal court, absent the state's consent to suit. Not long thereafter, the United States Supreme Court held in *Alden v. Maine*, 527 *U.S.* 706, 119 *S.Ct.* 2240, 144 *L.Ed.*2d 636 (1999), that Congress similarly does not have the authority to render states susceptible to FLSA suits in their own courts, absent their consent to suit. The holding in *Alden* was based not on Eleventh Amendment grounds, but rather on the very structure of the Constitution and the "inviolable" and "residuary" sovereignty retained by the states following ratification of the United States Constitution. *Id.* at 715, 119 *S.Ct.* at 2247, 144 *L. Ed.*2d at 653 (quoting *The Federalist No. 39*, at 245 (James Madison) (Clinton Rossiter ed., 1961)).

Thus, the Court was left with the issue of whether Maine had waived its immunity from suit for the FLSA claims. *Id.* at 757, 119 *S.Ct.* at 2268, 144 *L.Ed.*2d at 680. In considering that question, the Court stated that Maine "adheres to the general rule that 'a specific authority conferred by an enactment of the *legislature* is requisite if the sovereign is to be taken as having shed the protective mantle of immunity.' " *Id.* at 757–58, 119 *S.Ct.* at 2268, 144 *L.Ed.*2d at 680 (emphasis added) (quoting *Cushing v. Cohen*, 420 *A.*2d 919, 923 (Me.1980)). Because immunity was not shed concerning claims brought under the FLSA, the dismissal of the plaintiffs' action was affirmed. *Id.* at 758, 119 *S.Ct.* at 2268, 144 *L.Ed.*2d at 680–81. Similarly here, the question devolves into one of consent: Has the State of New Jersey consented to waive its sovereign immunity and submit to suit under the FLSA in its state courts?

## II.

Historically, our courts have long recognized that an essential and fundamental aspect of sovereignty is freedom from suit by

private citizens for money judgments absent the State's consent. *Lodor v. Baker, Arnold & Co.*, 39 *N.J.L.* 49, 50 (Sup.Ct.1876); *see also Taylor v. New Jersey Highway Auth.*, 22 *N.J.* 454, 466–67, 126 *A.*2d 313 (1956) (stating that "[t]he doctrine that the State may not be sued in our courts without its consent is firmly established in our jurisprudence"); *Gallena v. Scott*, 11 *N.J.* 231, 237, 94 *A.*2d 312 (1953) (holding that defendants as representatives of State cannot bind State to litigate claim for recovery of money because suit essentially against State, therefore it is not maintainable without sovereign consent signified by legislative action or waiver of immunity). Consent has required clear and unambiguous legislative expression. *Strobel Steel Constr. Co. v. State Highway Comm'n*, 120 *N.J.L.* 298, 302, 198 *A.* 774 (E. & A.1938) (noting that strict construction of statutes abrogating sovereign immunity is required to ensure that statutes in derogation of sovereignty " 'are not permitted to divest the state or its government of any of its prerogatives, rights, or remedies, unless the intention of the Legislature to effect such object is clearly expressed in the statute' ") (quoting *New Jersey Interstate Bridge & Tunnel Comm'n v. Jersey City*, 93 *N.J. Eq.* 550, 553, 118 *A.* 264 (Ch.1922)).

Over time, tolerance for the doctrine of sovereign immunity eroded, culminating in two decisions of this Court concerning the State's liability in tort and contract, *Willis v. Department of Conservation and Economic Development*, 55 *N.J.* 534, 264 *A.*2d 34 (1970), and *P, T & L Construction Co. v. Commissioner, Department of Transportation*, 55 *N.J.* 341, 262 *A.*2d 195 (1970). See *Rochinsky v. New Jersey Dep't of Transp.*, 110 *N.J.* 399, 404, 541 *A.*2d 1029 (1988). In *P, T & L* and *Willis*, the Court determined that it would no longer bar citizens from seeking judicial resolution of their tort and contract actions against the State. Previously, the Court had declined to entertain such actions because payment of judgments would depend on the willingness of other branches of government to make the necessary appropriations. In *P, T & L* and *Willis*, the Court departed from that approach because it was unwilling to presume that the

coordinate branches would be indifferent to judicial judgments. *P, T & L, supra,* 55 *N.J.* at 345–46, 262 *A.*2d 195. The courts were therefore opened to litigants who sought to sue the State in tort or contract actions, with the understanding that, nonetheless, the Legislature retained its power to accept the judgment and provide for payment. *Id.* at 346, 262 *A.*2d 195.

■ Legislative consent to suit then remained integral to waiver of sovereign immunity, for without express legislative consent to suit there is no ability to secure satisfaction of the judgment. The legislative response to the issue of abrogation of sovereign immunity for tort and contract liability came in 1972 in the form of the Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3, and the Contractual Liability Act, *N.J.S.A.* 59:13–1 to 13–10. With regard to contract claims, in pertinent part, the Legislature agreed to waive "sovereign immunity from liability arising out of an express contract or a contract implied in fact," but not for "punitive or consequential damages arising out of contract" or "for claims based upon implied warranties or upon contracts implied in law." *N.J.S.A.* 59:13–3. Rules of strict statutory construction control application of that statute because it derogates sovereignty. *Strobel Steel Constr. Co., supra,* 120 *N.J.L.* at 302, 198 *A.* 774.

### III.

■ Plaintiffs point to no New Jersey statute authorizing suit against the State for FLSA claims. They cannot, for there are none.

On reconsideration before the Appellate Division and before this Court, plaintiffs point to a reference in a collective bargaining agreement that was not made part of this record, but which we accept as fact, that states as follows:

> Where incidental overtime assignments are made, records of such time worked shall be kept and may be scheduled as compensatory time on an hour for hour basis unless the total hours worked in a payweek in which they occur require compensation at time and one-half in accordance with the Fair Labor Standards Act.

Based on that single reference to the FLSA, plaintiffs claim that they may sue New Jersey in State court for damages under the FLSA, seeking unpaid additional overtime, liquidated damages, prejudgment interest, costs, and attorneys' fees. But nowhere in the complaint do plaintiffs assert a contract claim. Their cause of action is singularly statutory. Plaintiffs seek to avoid that difficulty by arguing that theirs is an action *based* in contract under the contractual language cited from their collective bargaining agreement, and therefore the legislative waiver of sovereign immunity in the Contractual Liability Act stretches to encompass a right to sue the State in state court under the FLSA. That is at best a "bootstrapping" argument put forward by plaintiffs because they cannot demonstrate that the Legislature has expressly consented to suit against the State under that federal statutory scheme.

In fact, plaintiffs' claim is not contractual; it is statutory. It seeks statutory remedies. As the Appellate Division noted below, plaintiffs' theory of this action has changed several times. After the trial court dismissed their action *Alden* was decided by the United States Supreme Court, and since then plaintiffs have sought to recharacterize their two-count complaint alleging causes of action under two statutory schemes as alternatively "quasi-contractual" and later as "contract." As the Appellate Division surmised, those efforts were an attempt to fit within a definition of contract that is "amenable to enforcement pursuant to the Contractual Liability Act." *Allen v. Fauver, supra,* 327 *N.J.Super.* at 20, 742 *A.*2d 594. But recharacterization of the claim cannot change the essential nature of the claim. Plaintiffs' complaint alleges a violation of the federal FLSA and seeks damages pursuant to rights created by that federal statute. *Cf. King v. State,* 260 *Neb.* 14, 614 *N.W.*2d 341, 347 (2000) (affirming dismissal of suit, finding that suits were not based on rights created by employment contracts themselves but upon rights created by federal FLSA); *Commonwealth v. Luzik,* 259 *Va.* 198, 524 *S.E.*2d 871, 877 (2000) (denying that waiver of sovereign immunity occurred when employees brought claim under FLSA and not as

contract claim). We can see no reasonable conclusion other than that plaintiffs' claim is a statutory claim.

Secondly, plaintiffs' argument proceeds from a flawed impression of the effect of the Contractual Liability Act. The Act waived the State's historic immunity from suits based on an express contract or contracts implied in fact. It did not waive other immunities, nor did it empower State officials to surrender such rights of the sovereign through contract. The Contractual Liability Act does not confer on State officials the authority or legal right to act. It merely provides states that if a State official, having the legal authority to do so, makes a written or implied-in-fact contractual commitment, that contractual undertaking will be legally enforced. If the promise, however, was beyond the legal authority of the maker, no enforceable commitment will be found. *Cf. Walsh v. State,* 147 *N.J.* 595, 689 *A.*2d 131(1997) (affirming on basis of Appellate Division dissenting opinion that contract implied in fact is not enforceable because beyond legal authority of State official making promise).

■ We are concerned here with a State's right that goes to the essence of federalism: the right of a state not to be subjected to nonconsensual suit under the FLSA in either the federal courts, *Seminole Tribe, supra,* or its own courts, *Alden, supra.* As *Alden* observed, that right is central to sovereign dignity respected by the drafters of our system of federalism under the Constitution and exists by constitutional design. 527 *U.S.* at 733, 119 *S.Ct.* at 2256, 144 *L.Ed.*2d at 665 ("Although the sovereign immunity of the States derives at least in part from the common-law tradition, the structure and history of the Constitution make clear that the immunity exists today by constitutional design."). Thus, the United States Supreme Court held that a State's sovereign immunity from nonconsensual suit in its own courts was a fundamental part of its "inviolable" and "residuary" sovereignty preserved under the Constitution. To waive so important a protection, we require a clear and unequivocal statement of the Legislature.

No one has pointed to a specific legislative enactment waiving immunity for FLSA claims or delegating the power to do so to members of the Executive Branch. We decline to read the Contractual Liability Act as constituting such an authorization because it is not an enabling act. The Contractual Liability Act only provides a mechanism to enforce an express or implied-in-fact promise otherwise lawfully authorized. It does not expand the authority of a State officer to act, and the Act certainly does not delegate the power to waive the State's Eleventh Amendment or other immunities from federal acts. An independent, specific act of the Legislature is required to accomplish that result.

## IV.

The judgment of the Appellate Division is affirmed.

LONG, J., concurring in part and dissenting in part.

Plaintiffs are employees of Northern State Prison in Newark who have been denied overtime for the many occasions on which their responsibilities required them to remain at work for periods up to 15 minutes beyond the end of their shifts. They have sued the State for "incidental" overtime under federal and state statutes that they argue apply to their employment.

I fully subscribe to the majority's conclusion that the New Jersey State Wage and Hour Law, *N.J.S.A.* 34:11–56a, -a30, by its very terms, excludes the State of New Jersey from the definition of "employer," *N.J.S.A.* 34:11–56a1(g), and that plaintiffs have no claim against the State based on that enactment. It is in connection with the question of the plaintiffs' right to sue for benefits under the Fair Labor Standards Act, (FLSA), 29 *U.S.C.A.* § 201, –19, that I part company from my colleagues.

In *Alden v. Maine,* 527 *U.S.* 706, 119 *S.Ct.* 2240, 144 *L.Ed.*2d 636 (1999), the United States Supreme Court was faced with the question of the liability of a state for violations of the FLSA. The Supreme Judicial Court of Maine affirmed a trial court's dismissal of the complaint on the basis of sovereign immunity. *Id.* at 712,

119 *S.Ct.* at 2246, 144 *L.Ed.*2d at 652. The United States Supreme Court also affirmed, holding that Congress could not "subject nonconsenting States to private suits for damages in state courts," *ibid.*, because of the states' inherent sovereignty that is protected by the United States Constitution. *Id.* at 714, 119 *S.Ct.* at 2247, 144 *L.Ed.*2d at 653. According to the Supreme Court in *Alden*, legislation like the FLSA may not override that constitutional immunity although such immunity can be waived by consent. *Id.* at 755, 119 *S.Ct.* at 2267, 144 *L.Ed.*2d at 679. The Court ultimately held that, although Maine had consented to waive its immunity to various types of suits, it had not consented to the one brought by those government employees under the FLSA. *Id.* at 758, 119 *S.Ct.* at 2268, 144 *L.Ed.*2d. at 680–81. Indeed, that state had, by statute, explicitly excluded recourse to the courts for overtime pay. *Alden v. State*, 715 *A.*2d 172, 175 (Me.1998) (citing 26 *M.R.S.A.* § 664(3) (Supp.1997)).

Here, the relevant question is whether New Jersey has consented to plaintiff's suit under the FLSA. The answer is yes. In *P,T & L Constr. Co. v. Comm'r, Dep't of Trans.*, 55 *N.J.* 341, 346, 262 *A.*2d 195 (1970), we held that the State would no longer be immune from suit for breach of contract but would be required to answer "in its own courts on contracts it authorized." In 1972, the Legislature codified the *P,T & L* decision in the New Jersey Contractual Liability Act, *N.J.S.A.* 59:13–1, –10. That statute waives sovereign immunity for contractual obligations assumed by the State. It provides in relevant part:

> The State of New Jersey hereby waives its sovereign immunity from liability arising out of an express contract or a contract implied in fact and consents to have the same determined in accordance with the rules of law applicable to individuals and corporations; provided, however, that there shall be no recovery against the State for punitive or consequential damages arising out of contract nor shall there be any recovery against the State for claims based upon implied warranties or upon contracts implied in law.
>
> [*N.J.S.A.* 59:13–3.]

The point of that statute is to treat the State like a private litigant in matters arising out of breach of contract. *N.J.S.A.* 59:13–1, –10 cmt. The only limit on the waiver is for contracts that could

expose the State to unforseen risks, such as, for example, a contract implied in law. *Ibid.* That is also the rationale underlying the exclusion from the statutory waiver of punitive and consequential damages and implied warranties. *Ibid.* Each of those excluded categories could subject the State to losses that it could not foresee or for which it could not plan.

By contrast, the Contractual Liability Act broadly waives immunity for express contracts or those implied in fact, presumably because the State should be required to live up to clear promises just like any other litigant and because, by entering into a contract, the State can foresee the financial outcome in case of breach.

Here, Art. XXIX of the Collective Bargaining Agreement between plaintiffs and defendants governs the subject of incidental overtime. It states:

> Where incidental overtime assignments are made, records of such time worked shall be kept and may be scheduled as compensatory time on an hour for hour basis unless the total hours worked in a payweek in which they occur require compensation at time and one-half in accordance with the Fair Labor Standards Act.

That express provision makes it unnecessary for us to grapple with the more difficult question of whether an otherwise silent agreement incorporates existing applicable statutes under the "implied in fact" doctrine. *Saffore v. Atlantic Cas. Ins. Co.*, 21 *N.J.* 300, 121 *A.*2d 543 (1956); *Fidelity & Cas. Co. v. Hill Constr. Co.*, 11 *N.J. Misc.* 58, 164 *A.* 16 (Dist.Ct.1933); 11 *Williston on Contracts* § 30:19 (4th ed.1999).

What we are faced with in this case is an express contract specifically stating that the FLSA standard for recompensing incidental overtime shall govern. The majority's suggestion that that is a "statutory" claim and not a contract claim misapprehends the nature of the State's undertaking here and miscasts simple contract shorthand as some other legal form. This contract falls squarely within the waiver contemplated by the Contractual Liability Act because it defines the duty the State is willing to undertake and, concomitantly, puts the State on notice of the

potential sequellae of a breach. Unlike the position of the state of Maine in *Alden, supra,* New Jersey clearly waived immunity against suits on express contracts such as the one at issue here. It could not have done so more clearly.

In sum, there is no basis for the majority's conclusion that sovereign immunity is a bar to plaintiffs' claims and that further legislative action should be required to waive that immunity. The Legislature already has acted by passing the Contractual Liability Act, and the Court's reluctance to give effect to that statute and to the express terms of this Collective Bargaining Agreement is indeed mystifying. I would reverse and remand the case for trial on the FLSA issue.

Justice STEIN joins in this opinion.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO and LaVECCHIA—4.

*Concur in part/dissent in part*—Justices LONG and STEIN—2