JUSTICE ALBIN
concurring in part and dissenting in part.
The majority has come to an eminently equitable outcome by (1) recognizing that the failure-to-accommodate claims under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, and the federal Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101-12213, are virtually the same; (2) reviving the LAD claim erroneously dismissed by the trial court and substituting it for the ADA claim that the majority now dismisses on the ground of sovereign immunity; and (3) upholding the jury’s verdict and molding the damages award. Although the majority has taken a circuitous route to arrive at a just result, it nevertheless reached the right destination, and therefore I concur in the judgment.
I would have taken a more direct path and upheld the jury’s verdict and award on the ADA claim, finding that, on that claim, the State’s litigation conduct constituted a waiver of sovereign immunity. The State litigated the ADA claim over seven years at great expense to plaintiff and the civil justice system. Not until after the trial court erroneously dismissed the LAD claim and after the jury returned a verdict in plaintiffs favor on the ADA claim did the State assert sovereign immunity. Had the State moved earlier for dismissal of the ADA claim, the slumbering plaintiff undoubtedly would have awakened and demanded that he be permitted to prosecute the LAD failure-to-accommodate claim.
The majority treats sovereign immunity as though it is an immutable doctrine, but it is not. Sovereign immunity finds its source in the common law, and the common law adapts to changing circumstances to advance notions of fair play and equity. Recognizing that the State can waive sovereign immunity through *503 its litigation conduct is not a novel notion. In Lapides v. Board of Regents, 535 U.S. 613, 624, 122 S.Ct. 1640, 1646, 152 L.Ed.2d 806, 816 (2002), the United States Supreme Court found that the State of Georgia waived its immunity from suit under the Eleventh Amendment as the result of its litigation conduct. This Court is the final expositor of the common law. Holding that a state’s litigation conduct may constitute an exception to the doctrine of sovereign immunity would be a reasonable and fair adaptation of the common law. Accordingly, although I concur in the judgment, I dissent from the majority’s rejection of a litigation-conduct exception to the doctrine of sovereign immunity.
I.
The State had a rational basis for not moving to dismiss the ADA failure-to-aecommodate claim while the LAD failure-to-accommodate claim was still in the ease. Athough the two claims are virtually identical, the ADA claim—unlike the LAD claim—is subject to a cap on damages. If both claims had gone to the jury and, for some reason, the jury had returned a no-cause verdict on the LAD claim, the State would have benefited from the damages cap. Had the State moved for dismissal of the ADA claim before trial, it is highly unlikely that plaintiff would have slept on his rights and acquiesced in the dismissal of his LAD claim. Accordingly, the course taken by the State was not an unreasonable litigation strategy.
It is another thing, however, for this Court to allow the State, which defended the ADA claim for seven years, to assert sovereign immunity to overthrow a jury verdict, notwithstanding its litigation conduct.
II.
Sovereign immunity is a doctrine based on the ancient maxim that the king can do no wrong. State v. Otis Elevator Co., 12 N.J. 1, 13, 95 A.2d 715 (1953). The doctrine is a “judge-made concept,” a product of the common law, City of East Orange v. Palmer, 47 *504 N.J. 307, 328, 220 A.2d 679 (1966), abrogated in part by N.J.S.A. 54:4—3.3(b), and, therefore, like all common-law doctrines, sovereign immunity may be adapted to reflect changing “notions of fairness and justice,” see Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 110, 609 A.2d 11 (1992). “At the earliest common law the doctrine of ‘sovereign immunity’ ... was a rule that allowed substantial relief,” but as the doctrine was ushered into the modern era it “produce[d] ... harsh results.” Palmer, supra, 47 N.J. at 328, 220 A.2d 679 (1966) (quoting Muskopf v. Corning Hosp. Dist., 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457, 458 (1961), superseded by statute, Cal. Gov’t Code §§ 810-895.8). As a result, “tolerance for the doctrine of sovereign immunity eroded” over time. Allen v. Fauver, 167 N.J. 69, 74, 768 A.2d 1055 (2001).
As the superintendent of the common law, this Court in 1970 abrogated sovereign immunity as it applied both to contractual and tort actions against the State. P, T & L Constr. Co. v. Comm’r, Dep’t of Transp., 55 N.J. 341, 346, 262 A.2d 195 (1970) (contractual cases), superseded by statute, N.J.S.A. 59:13-1 to -10; Willis v. Dep’t of Conservation & Econ. Dev., 55 N.J. 534, 540, 264 A.2d 34 (1970) (tort cases), superseded by statute, N.J.S.A. 59:1-1 to 59:12-3. Those decisions make clear that the doctrine of sovereign immunity is not holy writ but a product of our evolving common law. The Legislature may preempt the common law through its statutory powers, as it did in the wake of P, T &L and Willis, by passing the Contractual Liability Act, N.J.S.A 59:13-1 to -10, and the Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3, and as it has in other areas, see, e.g., N.J.S.A. 2A:35-1 (replacing common-law action of ejectment and providing statutory remedy to one who claims title to property possessed by another).
In the absence of legislative action occupying the field, however, this Court retains its authority as the ultimate expositor of the common law to ensure that the sovereign-immunity doctrine is not wielded as an instrument of injustice. This Court is not powerless and is not required to sit as a silent witness after the State litigates a matter over a course of seven years and asserts *505 sovereign immunity only after an unfavorable jury verdict. This is especially so when the opposing party detrimentally relies on the State’s conduct.
Under such circumstances, common-sense notions of fairness dictate that this Court should recognize a litigation-conduct exception to sovereign immunity. This Court should follow the lead of the United States Supreme Court, which, in Lapides, supra, held that a state’s litigation conduct can constitute a waiver of Eleventh Amendment immunity. 535 U.S. at 624, 122 S.Ct. at 1646, 152 L.Ed.2 d at 816.
In Lapides, the plaintiff filed federal-civil-rights and state-law claims against certain Georgia state officials in a Georgia state court. Id. at 616,122 S.Ct. at 1642, 152 L.Ed.2d at 811. There was no question that, through its tort-claims act, Georgia had waived sovereign immunity on the state-law claims. Ibid. Georgia’s attorney general removed the lawsuit to federal court. Ibid. After succeeding in having the federal-civil-rights claims dismissed on qualified-immunity grounds, Georgia argued that it was immune from suit on the state-law claims based on Eleventh Amendment immunity. Ibid. Even though Georgia could not be sued in federal court for money damages under the strict language of the Eleventh Amendment, the Supreme Court held that Georgia’s litigation conduct—its removal of the case to federal court—constituted a waiver of its Eleventh Amendment immunity. Id. at 617, 624,122 S.Ct. at 1643, 1646, 152 L.Ed.2d at 812, 816. That piercing of Eleventh Amendment immunity was necessary to ensure that Georgia, through its litigation conduct, did not deny the plaintiff a forum where he could redress his state-law claims. Id. at 621-23, 122 S.Ct. at 1644-45,152 L.Ed.2d at 814-15.
Surely, if a state can waive Eleventh Amendment immunity—an immunity grounded in the text of the Federal Constitution—a state can waive the common-law doctrine of sovereign immunity. See Sea Hawk Seafoods, Inc. v. State, 215 P.3d 333, 334, 341 (Alaska 2009) (holding that state can waive sovereign immunity through litigation conduct).
*506 Our decision in Allen v. Fauver is not controlling law because in that case the State’s litigation conduct was not an issue. In Allen, supra, the State timely moved to dismiss, on sovereign-immunity grounds, claims filed by state correctional officers under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201-219.167 N.J. at 72, 768 A2d 1055. We upheld the dismissal of the claims because the Legislature did not indicate by “a clear and unequivocal statement” that it intended to waive sovereign immunity on FLSA claims brought against the State. Id. at 77.
In the present case, the State would have been entitled to dismissal of the federal ADA claim had it timely asserted sovereign immunity, just as the State had done in Allen. Unlike here, the State in Allen did not pursue a litigation strategy of defending on the federal claims over the course of many years to the detrimental reliance of the plaintiffs.
Recognizing a litigation-conduct exception to sovereign immunity would not impose any hardship on the State. The State merely would have to move timely to dismiss a lawsuit on sovereign-immunity grounds. That presumably would save the time and resources of the State, the plaintiff, and the court system. Thus, it should be evident that a litigation-conduct exception would result in manifold benefits and advance a sensible public policy.
III.
In conclusion, I dissent because, by declining to adopt a litigation-conduct exception to the doctrine of sovereign immunity, the majority has not assumed its rightful supervisory role over the common law. I concur because the majority has fashioned a remedy in this ease that achieves a just outcome.