26 A.3d 363

COUNTY OF HUDSON, PLAINTIFF–APPELLANT, v. STATE
OF NEW JERSEY, DEPARTMENT OF CORRECTIONS,
DEFENDANT–RESPONDENT.

Argued September 27, 2010—Decided June 7, 2011.

*Steven L. Menaker* argued the cause for appellant (*Chasan Leyner & Lamparello*, attorneys; *Mr. Menaker* and *Kirstin Bohn*, on the brief).

*Mary Beth Wood*, Senior Deputy Attorney General, argued the cause for respondent (*Paula T. Dow*, Attorney General of New Jersey, attorney).

Justice HOENS delivered the opinion of the Court.

In this appeal, we consider whether a party to a dispute arising out of the terms of its contracts with the State of New Jersey may expand its contractual claims by amending its complaint rather than by complying with the notice of claim requirement of the Contractual Liability Act, *N.J.S.A.* 59:13–1 to –10. Because permitting a party to do so would effectively create a means to bypass the notice requirement embodied in the statute governing contract claims against the State and because it would thwart the purposes that the notice requirement was designed to achieve, we conclude that contract claims against the State may not be asserted through an amendment to an existing complaint.

Rather, contract claims against the State, regardless of when they arise, must be asserted through the timely service of a notice of claim in compliance with the applicable statutory provisions. *See N.J.S.A.* 59:13–5 (governing presentation and consideration of contract claims against the State). Thereafter, and only following

the expiration of the time period imposed by the statute, *see ibid.*, a contract claim may be the subject of a complaint or, if appropriate, it may be added to an existing complaint. As part of our analysis of the issues in dispute between the parties, we also reject the assertion that by proceeding with an amendment to an existing complaint, a contracting party has substantially complied with the statutory notice requirement. We therefore affirm the judgment of the Appellate Division dismissing the amended complaint through which the expanded claims were added.

## I.

This litigation has a lengthy history, a summary of which is required for an understanding of the result that we reach. Plaintiff County of Hudson entered into two contracts with defendant State of New Jersey in 1987 and 1988. Each of those agreements, referred to as Facility Assistance Contracts, set forth the terms pursuant to which the County would make beds available in its county jail facilities for the State's use in housing State prisoners. The contracts fixed the number of cells or beds that would be made available to the State, the prisoners who would be eligible for being housed in the County's jail, the per diem rate at which the County was to be compensated, and a method for establishing that per diem rate.

In 1997, the County filed a complaint in which it alleged that the State had underpaid it for housing state prisoners pursuant to the terms of the 1987 and 1988 Facility Assistance Contracts. That suit was settled a year later, with the parties agreeing to alter the manner in which the applicable daily rate of reimbursement would be calculated. For purposes of this appeal, the parties do not dispute that the daily rate was to be based on the average actual cost of operating two of the State's prisons.

In May 2003, the State advised the County in writing that the State had overpaid the amount actually owed for housing prisoners in the county jail. That overpayment had resulted because the State had made payments based on the anticipated, or projected,

average cost of operating the two State prisons that served as the contractual benchmark. When the State treasurer calculated the actual average cost of operating the two State prisons, it was lower than the anticipated cost, as a result of which the payments made were higher than they should have been pursuant to the agreed-upon formula. In order to recoup that overpayment, the State advised the County that it would make a downward adjustment to the payments it then anticipated would be due to the County for the next twelve months.

In September 2003, the Hudson County Administrator wrote to the State to dispute that there had been any overpayment. As part of that letter, the County countered with the assertion that it had been underpaid. According to the County, the State had paid only for the beds that were used by State prisoners instead of paying for all of the beds that the County was contractually obligated to make available. The County asserted that by doing so, the State had violated the Facility Assistance Contracts, resulting in a substantial loss of revenue for the period from July 1, 2001 to March 31, 2003.

Following an investigation into the matter, the State responded to the County with an explanation about how its reimbursement figures had been derived. As part of its explanation about how the calculations were derived, the State forwarded to the County a series of charts that identified the numbers of State prisoners and dates on which they were housed.

During the months that followed, the parties continued to exchange correspondence that focused their dispute. Distilled to its essence, the County argued that under the 1987 and 1988 Facility Assistance Contracts it was entitled to be reimbursed for 100 beds each day regardless of the actual number of State inmates housed on any given day. The State, however, insisted that although the County was required to make certain that 100 beds were available, its contractual obligation to pay was limited to those beds that were actually being used by State prisoners and did not extend to unfilled beds as the County claimed.

In September 2004, when the negotiations between the parties had reached an impasse, the County initiated this litigation. In a single-count complaint, the County asserted that the 1987 and 1988 Facility Assistance Contracts entitled it to be paid, at a specified per diem rate, for 100 beds and that defendant had failed to make those payments, thereby breaching the contracts and entitling it to damages. As part of its answer to the complaint, the State interposed as a separate defense that the claim was barred by the Contractual Liability Act, *N.J.S.A.* 59:13–1 to –10.

Discovery proceeded on the substantive claim until July 22, 2005, when the County deposed a long-time employee of the Department of Corrections (DOC) whose job responsibilities included "process[ing] the reimbursements [to the counties] for housing of [S]tate inmates in the county facilities." During the deposition, the employee referred to the exclusion of the first fifteen days from the reimbursement calculation for all prisoners, describing it as a period for which reimbursements were not made. She explained that the fifteen-day exclusion period was based on general practice and was supported by a written policy included in the DOC Procedure Manual. She also explained that county facilities were not reimbursed for parole violators with pending charges and noted that a lower rate, which had been provided to her by the Director of the DOC, had traditionally been paid for any beds used in excess of 100 beds.

A few days after that deposition, the State produced additional documents that had been requested by the County, including a copy of the DOC Procedure Manual to which the witness had referred. That Manual had been created and was first disseminated in 1995. In a cover letter accompanying the additional documents, the State described the genesis of the fifteen-day exclusion period. According to the cover letter, the fifteen-day exclusion from any payment obligation "is derived from *N.J.S.A.* 2C:43–10(e) and defines a State sentenced inmate and when he is in State custody." The cover letter did not offer added explana-

tions relating to payments for parole violators or payments if more than 100 beds were used.

By leave granted, the County filed an amended complaint on September 14, 2005. Technically the County's second amended complaint, it purported to add three categories of claims. Those new claims asserted that the State failed to pay for occupied beds in excess of 100 at the per diem rate, that the State failed to pay for the first fifteen days that any State prisoner was housed in the County facility, and that the State failed to pay for any State parole violators housed in the County facility.

Early in 2006, the trial court granted the State's motion to dismiss both the original and the amended complaints, concluding that the County had failed to comply with the statutory notice of claim provision, see N.J.S.A. 59:13-5. In support of that order, the trial court addressed the original and the amended complaints separately. As to the former, the trial court rejected the County's contention that it had substantially complied with the statutory notice requirement through its correspondence with the State.

Noting that the earliest possible notice could be found in the September 2003 letter, the trial court reasoned that it could not constitute timely notice as to the claim in the original complaint. Because the statute required that notice of claim be filed no later than ninety days after the accrual of any cause of action, and because the claim in the original complaint related to a time period that ended on March 31, 2003, the September 2003 letter, sent six months after the latest date on which the cause of action accrued, was too late to comply with the statute. Turning to the claims raised in the amended complaint, the trial court found that the County's argument about when those claims accrued was irrelevant because the County made no effort to file a notice of claim, thus failing to comply with the statutory prerequisite to suit.

In an unpublished opinion issued on June 28, 2007, the Appellate Division reversed the trial court in part. The panel concluded that the September 2003 letter was sufficient to serve as a notice of the County's contractual claims, because it identified the Coun-

ty as the claimant, identified the nature of the claims, discussed the State's obligations under the contracts at issue, and made a demand for payment. Because the statute requires that a claimant give notice within ninety days of the accrual of the claim, however, the panel reasoned that the September 2003 letter would only permit the County to proceed on claims that had arisen on and after June 6, 2003. Although that made the claim raised in the original complaint untimely, the Appellate Division remanded to the trial court for consideration of whether the claims added through the second amended complaint were timely. In remanding the matter to the trial court, the appellate panel did not address whether a separate notice of claim was required for those additional claims.

On remand, the trial court concluded that the Contractual Liability Act did not require the County to file a notice of claim relating to the claims that it added to the complaint by way of the second amended complaint. The trial court essentially agreed with the County's arguments that the pending litigation put the State on notice of all potential contract-based claims, that the Contractual Liability Act did not apply to newly-asserted claims that arose during discovery, and that it would be "overly burdensome" to require plaintiff to file a new notice of claim under those circumstances. As part of that analysis, the trial court rejected the State's assertion that the newly-added claims were barred by laches. Following a separate summary judgment proceeding related to the merits of the dispute, the trial court entered judgment in favor of the County.

In a second unpublished decision, the Appellate Division again reversed the trial court. In relevant part, the panel concluded that plaintiff was required to comply with the notice requirements of the Contractual Liability Act and that its failure to do so barred the claims asserted in the second amended complaint. In reaching that conclusion, the panel disagreed with the trial court's reliance on the discovery rule, see *Lopez v. Swyer*, 62 *N.J.* 267, 300 *A.*2d 563 (1973), concluding that it had no application to contract

disputes and reasoning that because both parties were familiar with the provisions and the interpretation of the Facility Assistance Contracts, there could be no argument that the newly-asserted claims were ones that could not have been discovered in the exercise of reasonable diligence.

Moreover, because the claims that the County sought to add were entirely new ones, as compared to the claims asserted in the original complaint, the panel concluded that a new notice of claim was required.[1] That being so, the panel rejected the County's substantial compliance argument, both because of the differences in the claims and because of the County's failure to explain why it had not strictly complied with the notice requirement.

We granted the County's petition for certification, 201 *N.J.* 439, 991 *A.*2d 229 (2010), in which it asked this Court to address only whether the Contractual Liability Act requires service of a formal notice of claim when the claim is discovered during the pendency of litigation and, in the event that it does, whether the County substantially complied with that statutory requirement through service of its second amended complaint.

## II.

The County offers two arguments in support of its request that the Appellate Division's judgment be reversed. First, it maintains that the Contractual Liability Act does not require a party to serve a notice of claim when new claims are discovered while litigation is pending. It contends that, in the context of ongoing litigation, notice is no longer relevant because the State has already begun preparing its defense. The County argues that

---

[1] The panel also reversed the decision of the trial court interpreting the meaning of the contracts. Because the panel concluded that the contracts did not require defendant to pay for 100 beds regardless of whether or not they were actually occupied by State prisoners, the trial court's judgment in the County's favor for unused beds was reversed. The County did not seek certification on this issue, focusing instead on the claims raised in the second amended complaint, as a result of which we will not consider it.

because the statutory purpose of the notice requirement is to avoid litigation by providing the State with an opportunity to investigate and resolve a claim, once litigation has commenced, notice is unnecessary because its purpose cannot be accomplished.

Second, the County asserts that if notice is required for new claims that arise during the pendency of litigation, the prompt amendment of its complaint should suffice. The County contends that because it communicated with the State immediately after it discovered the additional claims and because it waited approximately ninety days for the State to provide a response prior to amending its complaint, this Court should deem that the amended complaint substantially complied with the statutory notice provision.

Implicit in the issues raised by the County is the contention that its contract claims should be considered in light of the discovery rule. It asserts that the Appellate Division erred when it rejected that argument and when it further concluded that the County could not benefit from the application of that equitable doctrine because it knew or should have known of the additional claimed contractual breaches.

The State urges this Court to affirm the Appellate Division's judgment. It argues that it was never given notice of any of the new claims, pointing out that they were raised for the first time when the second amended complaint was filed. The State therefore asserts that the claims are barred by the clear mandate of the statutory notice requirement and it urges us to reject the County's substantial compliance argument as well.

Moreover, the State contends that this Court should reject the County's argument that the discovery rule applies to contract claims, and asserts that even if the discovery rule had application to contract claims, as a practical matter, it could not apply to these particular claims. Because the State's payment policies and its interpretation of its contractual obligation to pay for housing state prisoners, including the now-disputed fifteen-day exclusion and the calculations relating to parole violators, were contained in its

Procedure Manual and were readily available through an inspection of the supporting documents it forwarded to the County each month, the State asserts that even if it applied, the discovery rule could afford the County no relief.

## III.

We begin our analysis of this dispute with a brief summary of the historical background of the statutory scheme relating to the housing of State prisoners in County jail facilities, because it is in accordance with that statute that the parties entered into the 1987 and 1988 Facility Assistance Contracts.

The contracts that are at the center of this dispute were entered into after the enactment of the County Correctional Policy Act (CCPA), *N.J.S.A.* 30:8–16.3 to –16.12, which was designed to address the long-standing problem of prison overcrowding, *see Cnty. of Morris v. Fauver,* 153 *N.J.* 80, 88–89, 707 *A.*2d 958 (1998). As we have previously explained, that statute was intended to replace a series of Executive Orders that in turn were based on an earlier legislative effort to address the prison overcrowding problem, *see id.* at 87–88, 707 *A.*2d 958 (describing history of Executive Orders based on Civil Defense and Disaster Control Act, *N.J.S.A.* App. A:9–30 to –63), with a more permanent solution to the problem of prison space, *id.* at 88–90, 707 *A.*2d 958.

In short, the CCPA essentially exchanged financial assistance from the State, which was to be used by the counties to construct correctional facilities, for permission to house State prisoners in those facilities once built, *id.* at 88–89, 707 *A.*2d 958; *see N.J.S.A.* 30:8–16.5, at per diem rates that would reflect the State's level of financial assistance, *N.J.S.A.* 30:8–16.7. Even so, the enactment of the CCPA did not end reliance on the Executive Orders immediately, and disputes about housing of State prisoners in county facilities continued. *See Fauver, supra,* 153 *N.J.* at 89–90, 707 *A.*2d 958.

In *Fauver,* this Court considered Morris County's dispute about payments for State prisoners housed in its county jail. *Id.* at 87–

88, 707 *A.*2d 958. Some of those prisoners were housed pursuant to the Executive Orders that preceded the enactment of the CCPA, although others were subject to the terms of contracts entered into in order to effectuate the purposes of the CCPA. *Id.* at 91–93, 707 *A.*2d 958. As such, our analysis rested in part on the fact that the payment obligations set forth in the Executive Orders were different from those that were embodied in the contracts. Although to some extent that factual underpinning distinguishes *Fauver* from the record in this appeal, we are not writing on a clean slate as it relates to contracts with the counties over housing of State prisoners. More to the point, as an integral part of the analysis in *Fauver*, we also considered the meaning and intent of the Contractual Liability Act, which is the statutory underpinning for any contract claim against the State. *Id.* at 105–11, 707 *A.*2d 958.

The Contractual Liability Act, *N.J.S.A.* 59:13–1 to –10, was enacted in response to a decision of this Court abrogating sovereign immunity in contract disputes, *see P, T & L Constr. Co. v. Comm'r, Dep't of Transp.,* 55 *N.J.* 341, 346, 262 *A.*2d 195 (1970). It operates in a manner that is roughly similar to its more familiar counterpart, the Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3. That is, the Contractual Liability Act effects a limited waiver of sovereign immunity. *N.J.S.A.* 59:13–3. It permits suits based on contracts to be filed against the State, *ibid.,* but requires compliance with its statutory terms as a prerequisite for commencing any such litigation, *N.J.S.A.* 59:13–5. The most significant statutory terms for purposes of this appeal are those that define the accrual of a cause of action, *N.J.S.A.* 59:13–2, and that require the potential claimant to serve a timely notice of claim as a prerequisite to litigation, *N.J.S.A.* 59:13–5.

The Contractual Liability Act defines the accrual of a claim as "the date on which the claim arose." *N.J.S.A.* 59:13–2. In considering the meaning of that statutory provision as it bears on the rights of a party to a contract entered into pursuant to the CCPA for the housing of State prisoners, we use the analysis that

would apply to an installment contract. *See Fauver, supra*, 153 *N.J.* at 107, 707 *A.*2d 958. We therefore have determined that a county's cause of action accrues with each date that a payment is missed or is due. *Id.* at 107–08, 707 *A.*2d 958 (citing *Metromedia Co. v. Hartz Mountain Assocs.*, 139 *N.J.* 532, 535, 655 *A.*2d 1379 (1995)).

In addition to the statutory language defining the accrual of a cause of action, the Contractual Liability Act, like the Tort Claims Act, requires service of a notice of claim in advance of litigation. *Compare N.J.S.A.* 59:13–5 (Contractual Liability Act) *with N.J.S.A.* 59:8–3 to –11 (Tort Claims Act). The notice of claim provision in the Contractual Liability Act is broad, providing that "[i]t shall be the responsibility of parties contracting with the State to promptly notify the State in writing of any situation or occurrence which may potentially result in the submission of a claim against the State." *N.J.S.A.* 59:13–5.

The Act bars any contractual recovery if the contractor "fails to notify the appropriate contracting agency within 90 days of accrual of his claim" absent leave of court, *N.J.S.A.* 59:13–5(a), which is limited to leave granted within one year of the date of accrual, *N.J.S.A.* 59:13–6. Further, leave requires the contractor to demonstrate both "sufficient reason" for failing to comply with the 90–day time limit period and "that the State has not been substantially prejudiced" by the delay. *Ibid.*

## IV.

Notwithstanding the lengthy procedural history of this matter, the issues before this Court are limited to the County's two questions relating to the Contractual Liability Act. Those questions are whether a contract claim that is newly discovered during the pendency of litigation pursuant to the Act must be commenced by formal notice and, if so, whether filing an amended complaint constitutes substantial compliance with that statutory requirement.

Implicit in the questions presented by the County, and explicit in the proceedings before the Appellate Division, is the County's argument about the applicability of the discovery rule to the claims it sought to add through the second amended complaint. That is, the County asserted that it first learned [2] during a deposition taken in discovery in this litigation that the State always excluded the first fifteen days of an inmate's housing in the County facility when calculating payments due and that the State did not reimburse the County for housing State parole violators. According to the County, it was that deposition testimony, and the disclosure of supporting documents, that constituted its discovery of the claims and led it to seek leave to amend the complaint to assert that the State had underpaid it.

■ Before turning to the arguments that are directly raised in this appeal, we are constrained to address the discovery rule issue. The discovery rule is an equitable doctrine, most often utilized in personal injury litigation. *See Fauver, supra*, 153 *N.J.* at 109, 707 *A.*2d 958. It applies in the context of claims arising from circumstances in which an innocent plaintiff is unaware of the essential elements of fault and injury that are central to instituting litigation, *see Lynch v. Rubacky*, 85 *N.J.* 65, 70, 424 *A.*2d 1169 (1981), and in which those facts were not, and could not have been, in the exercise of reasonable diligence, discovered within the ordinary period of limitations, *see Lopez, supra*, 62 *N.J.* at 274, 300 *A.*2d 563. We need not evaluate the argument concerning its potential

---

[2] There is considerable confusion in the record about the time when the County contends it first learned of the three claims that it added by way of the second amended complaint. Indeed, the certifications in the record are inconsistent with the briefs that have been filed and with representations of counsel during oral argument before this Court. Particularly cloudy is when the County asserts that it first came to believe that the State had not paid at all for housing more than 100 prisoners on any given day, but because the County appears to concede that there were no such days, we need not consider it at length. For purposes of our analysis, we address the three newly-added claims as if the County is asserting that it first learned of each of them during discovery in connection with the original complaint in this matter.

application in this matter, however, because we have previously rejected the assertion that the discovery rule applies to claims made pursuant to the Contractual Liability Act. *Fauver, supra,* 153 *N.J.* at 110–11, 707 *A.*2d 958.

In *Fauver,* Morris County contended that it was entitled to the benefit of the discovery rule, which would operate to extend the time when its cause of action for underpayment pursuant to its contracts would accrue. *Id.* at 109–10, 707 *A.*2d 958. After defining and explaining the purpose of the discovery rule, *id.* at 109, 707 *A.*2d 958 (quoting *O'Keeffe v. Snyder,* 83 *N.J.* 478, 491, 416 *A.*2d 862 (1980)), and after exploring the roots of this equitable doctrine, *ibid.* (quoting *Lopez, supra,* 62 *N.J.* at 274, 300 *A.*2d 563), we concluded that it "generally does not apply to contract actions[,]" and that it had no application to the contracts relating to housing of State prisoners to which the County of Morris was a party. *Id.* at 110–11, 707 *A.*2d 958. In particular, we made the following comments about the contract in issue in *Fauver:*

> The present situation involves a contract with clear and explicit payment provisions. The actual payments due under the contract were readily discoverable through public information and calculation. Not only could the County have discovered the lack of adherence to the contractual reimbursement rate through the exercise of reasonable diligence, but the County probably had actual knowledge that there existed a difference in payment as early as 1989 . . .
> [*Ibid.*]

Applying that logic to the facts in issue, we rejected the argument that the discovery rule applied to Morris County's claim and we used the installment contract approach in its place. *Id.* at 111, 707 *A.*2d 958. As a result, we concluded that Morris County's complaint pursuant to the Contractual Liability Act was limited to those claims that had accrued ninety days prior to the date on which the notice of claim had been filed. *Ibid.* Therefore, because the discovery rule did not apply, claims that arose prior to ninety days before service of the notice of claim were rejected as untimely. *Ibid.*

Our reasoning in *Fauver* is fully applicable to many of the arguments raised by Hudson County in this dispute. First,

we find no ground on which to vary from our earlier analysis that, for accrual purposes, claims brought pursuant to the Contractual Liability Act are similar to installment contract claims. As a result, by operation of the Act, only claims that accrued ninety days prior to the service of a notice of claim are timely. Second, we see no reason to conclude that the discovery rule could operate so as to extend the backward reach of recovery for a claim beyond ninety days prior to the service of the notice of claim.

Moreover, even if we were inclined to consider the application of the discovery rule to contract claims in general or to claims brought pursuant to the Contractual Liability Act in particular, the County would not be able to demonstrate entitlement to that rule on this record for any of the three additional claims raised in the amended complaint.

 There can be no dispute that County knew, or should have known through the exercise of reasonable diligence, the way in which the State calculated payments. Although best illustrated by the claim relating to the exclusion of the first fifteen days from the calculation as to any particular prisoner, the record is plain as to the State's methodology for parole violators and total prisoner census as well. That methodology is set forth in the DOC Procedure Manual and in the monthly documents that accompanied payments. Moreover, it is grounded on longstanding interpretations about how and when an individual becomes a State inmate. Those precedents bear brief explanation because they inform the sound reasons for the State's payment methodology.

 Since the inception of the contracts, the State calculated the days for which payment is owed to the County for State inmates by excluding the first fifteen days after sentencing because a prisoner held in a county jail does not become a state inmate automatically. By statute, the State is prohibited from removing an inmate from a county jail for at least forty-eight hours after sentencing, see N.J.S.A. 2C:43–10(e), and even thereafter, an inmate's change in status is not automatic. Instead, that process begins with entry of the judgment of conviction, which

"occurs when the judge signs the sentencing order and it is entered by the clerk." *Sassano v. BLT Discovery, Inc.,* 245 *N.J.Super.* 539, 546, 586 *A.*2d 307 (App.Div.1991) (citing *State v. Moore,* 178 *N.J.Super.* 417, 427, 429 *A.*2d 397 (App.Div.) (citing *R.* 3:21–5), *certif. denied,* 87 *N.J.* 406, 434 *A.*2d 1083 (1981)). "[I]t is the judgment of the court which is the true source of the right of the keeper of the State Prison to detain the prisoner." *In re De Luccia,* 10 *N.J.Super.* 374, 381, 76 *A.*2d 304 (Cty.Ct.1950); *accord State v. Mahaney,* 73 *N.J.L.* 53, 54–55, 62 *A.* 265 (Sup.Ct.1905) (holding that "judgment is the source of the right of the keeper of the state prison to detain the petitioner"), *aff'd,* 74 *N.J.L.* 849, 67 *A.* 1103 (E. & A.1907). The analysis as to parole violators is similar, because an individual who has been charged with a crime, even if on parole at the time, is detained on the new offense and therefore not considered to be a State inmate pending conviction and sentencing.

Although by statute, *see N.J.S.A.* 2C:43–10(e), State-sentenced inmates must be delivered to the custody of the Department of Corrections within fifteen days of sentencing, transfer of custody depends on completion of all of the appropriate paperwork evidencing conviction. Therefore, for purposes of calculating payment due pursuant to the Facilities Assistance Contracts, the State has used the statutory fifteen-day mandate as its benchmark.

The State's interpretation of its Facility Assistance Contracts in that manner long predates the contracts in issue in this appeal, *see Fauver, supra,* 153 *N.J.* at 92, 707 *A.*2d 958, and was formally embodied as part of the reimbursement methodology when it was included in the Policy Manual of 1995. The Manual, in unmistakable language, explained that a State inmate for whom the county will be eligible for reimbursement is defined as one "who has been housed in a county jail beyond the fifteenth calendar day from his/her date of sentence." In addition, as part of its summary of provisions, the Manual describes the per diem reimbursement report that will be provided, including the three bases on which a

state inmate might be ineligible for purposes of reimbursement. That list of reasons includes a reference to the State's interpretation of the contracts as excluding the first fifteen days that a state inmate is housed at a county facility. The Manual provides a similar definition of State inmates in a section regarding reimbursement for medical expenses. Moreover, the record in this appeal reflects that as part of its reimbursement each month, the State provided the County with an inmate-by-inmate census to support its calculations and accompanied that report with a cover letter that expressly notes that payment is limited to "inmates housed in excess of fifteen days."

The claim that the State failed to pay for parole violators was likewise discoverable since the inception of the contracts. At three separate points in the Manual, the State excludes certain types of parole violators from the category of State inmates eligible for reimbursement. Moreover, the detailed inmate-by-inmate census clearly identifies parole violators and on an individual basis calculates the days for which reimbursement was provided.

Finally, the claim that the State failed to pay for any beds used by State inmates over the 100 reserved was also discoverable by reasonable diligence long before this action was filed. Although the reimbursement procedure for beds over the contractually reserved beds is not addressed in the Manual, it is addressed in the cover letter accompanying the monthly reports. The cover letter explicitly indicated that "State inmates housed above the contractual level are reimbursed at $58.50 per diem[, less than the contractual rate], effective 16th day after date of sentence." Moreover, the County could, through reasonable diligence, determine if it was not being paid for these inmates on review of the detailed monthly reports.

In light of that plain course of conduct and clarity of contract interpretation by the State, even if we were to conclude that the discovery rule has some general application to matters sounding in contract, the County could not demonstrate entitlement to its

benefit in this matter, because it cannot show that it could not, in the exercise of reasonable diligence, have discovered the claims before it did.

We turn, then, to consider the two questions raised by the County. The first is whether, assuming that the additional claims were first discovered during the pendency of this litigation, the County was required to serve a notice of claim pursuant to the Contractual Liability Act. The second is whether, even if the statute mandates that a claim be asserted through filing of a notice of claim, the amendment of its complaint serves as substantial compliance with that statutory requirement.

Although the first question is clouded by the County's assertions concerning the discovery rule, it is not extinguished by our conclusion that the discovery rule is inapplicable. Instead, because of the installment contract approach used in similar claims, a new cause of action accrues each month, with the result that claims for the preceding ninety days could be timely once raised.

■ Addressing the first question raised by the County, we are not persuaded that a contract claim that is newly-discovered during the pendency of ongoing litigation with the State should be exempted from the operation of the notice provision of the Contractual Liability Act, *N.J.S.A.* 59:13–5. First, the statutory language relating to notice uses terms that are both mandatory and all-inclusive. *Ibid.* That is, the statute provides that parties "shall" inform the State "of any situation or occurrence which may potentially result in the submission of a claim against the State." *Ibid.* It continues by providing that "all contract claims against the State ... shall be forever barred" if the claimant fails to comply with the notice provision. *Ibid.* The use of such language leaves little doubt that the requirement is mandatory. *See, e.g., Aponte–Correa v. Allstate Ins. Co.,* 162 *N.J.* 318, 325, 744 *A.*2d 175 (2000) (explaining plain language interpretation of "shall" as being mandatory); 3 Norman J. Singer, *Sutherland Statutory Construction,* § 57.2 (7th ed.2008) (same). Moreover, in light of the fact that the Contractual Liability Act is a statute in derogation of sovereignty,

we have generally interpreted it strictly. *See Allen v. Fauver*, 167 *N.J.* 69, 75, 768 *A.*2d 1055 (2001).

The County argues that notice of new claims that a litigant seeks to add to an existing contract dispute with the State should be exempted from the notice requirement because the purposes to be served by notice, namely, an opportunity to investigate and resolve the claim, are irrelevant in the context of ongoing litigation. We do not agree, in part because the language of the statute is plain, but in part because the purposes that notice serves are broader than the ones on which the County relies. Even in the context of existing litigation, the State is entitled to undertake an investigation of a newly-asserted contract claim free of court-imposed discovery deadlines and similar constraints that bind litigants. The time delay embodied in the statute for the purposes of permitting investigation, preparation, and potential resolution would not be served were claims arising during the course of litigation exempted from the notice requirements. *See Frapaul Constr. Co. v. State, Dep't of Transp.*, 175 *N.J.Super.* 84, 92, 417 *A.*2d 592 (App.Div.1980); *Housing Auth. v. Sagner*, 142 *N.J.Super.* 332, 343, 361 *A.*2d 565 (App.Div.1976).

■ Similarly, we reject the County's assertion that because it raised its new contract claims through an amended complaint, it should be entitled to the benefit of the doctrine of substantial compliance. Stripped down to its essence, this argument largely overlaps the County's contention that it should be relieved of having to give any notice because the amended complaint served the same purpose as the statutory requirement of notice. We reject it for several reasons.

■ The doctrine of substantial compliance is an equitable one which is utilized "to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." *Galik v. Clara Maass Med. Ctr.*, 167 *N.J.* 341, 352, 771 *A.*2d 1141 (2001). Thus, the doctrine operates "to prevent barring legitimate claims due to technical defects." *Lebron v. Sanchez*, 407 *N.J.Super.* 204, 215, 970 *A.*2d 399 (App.

Div.2009) (applying doctrine of substantial compliance to notice requirement of Tort Claims Act). In general, it rests on a demonstration that a party took "a series of steps ... to comply with the statute involved," and those steps achieved the statute's purpose, as for example, providing notice. *Galik, supra,* 167 *N.J.* at 353–54, 771 *A.*2d 1141 (quoting *Bernstein v. Bd. of Trs.,* 151 *N.J.Super.* 71, 76–77, 376 *A.*2d 563 (App.Div.1977) (applying doctrine to claim pursuant to Tort Claims Act)) (internal quotations omitted). Even so, the doctrine can only apply if there is no prejudice to the other party and if there is "a reasonable explanation why there was not strict compliance with the statute." *Ibid.* (quoting *Bernstein, supra,* 151 *N.J.Super.* at 76–77, 376 *A.*2d 563) (internal quotations omitted).

In addressing this question, we deem it prudent to look to the manner in which similar arguments raised in the context of the corollary Tort Claims Act have been considered. That more familiar statute has notice provisions which serve purposes like those that underlie the notice provision in the Contractual Liability Act. *Compare N.J.S.A.* 59:13–5 (Contractual Liability Act) *with N.J.S.A.* 59:8–3 to –11 (Tort Claims Act); *see also Port Auth. of New York and New Jersey v. Airport Auto Servs., Inc.,* 396 *N.J.Super.* 427, 430, 934 *A.*2d 665 (App.Div.2007) (noting similarities of policies underlying notice provisions of two statutes). Although strict compliance with those provisions has not been required, and the courts have invoked the substantial compliance doctrine, *see, e.g., Tuckey v. Harleysville Ins. Co.,* 236 *N.J.Super.* 221, 225, 565 *A.*2d 419 (App.Div.1989), it has not been extended to the lengths that the County suggests would be appropriate in this matter.

Indeed, although our Appellate Division has commented that claims subject to the Tort Claims Act could be added to existing litigation, that comment arose in the context of a plaintiff who had filed a notice of claim prior to seeking to add those claims by way of amended complaint. *See Morgan v. Union County,* 268 *N.J.Super.* 337, 357, 633 *A.*2d 985 (App.Div.1993), *certif. denied,*

135 *N.J.* 468, 640 *A.*2d 850 (1994). More to the point, even the most generous application of the substantial compliance doctrine has rejected the notion that filing a complaint is itself a substitute for notice. *See Guzman v. City of Perth Amboy,* 214 *N.J.Super.* 167, 171–72, 518 *A.*2d 758 (App.Div.1986); *Madej v. Doe,* 194 *N.J.Super.* 580, 584–86, 477 *A.*2d 439 (Law Div.1984). And we have held that filing a worker's compensation petition does not constitute substantial compliance with the notice provisions of the Tort Claims Act. *Wunschel v. City of Jersey City,* 96 *N.J.* 651, 667–68, 477 *A.*2d 329 (1984).

We find no basis on which to pursue a different approach to the notice requirement included in the Contractual Liability Act than the one these precedents represent. We therefore reject the County's argument that it substantially complied with that requirement through its second amended complaint. To endorse the County's approach would be to agree that serving a complaint supplants the need for notice, a result directly contrary to the plain language of the statute and inconsistent with the analysis of like arguments raised in the context of the Tort Claims Act.

## V.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, ALBIN, RIVERA–SOTO, HOENS and STERN (temporarily assigned)—5.

*Not Participating*—Justice LaVECCHIA.