**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0117-22

KENNETH POLI,

 Plaintiff-Appellant,

v.

PORT AUTHORITY OF
NEW YORK AND NEW JERSEY,

 Defendant-Respondent.

_____

    Argued January 29, 2024 – Decided March 6, 2024

    Before Judges Sabatino, Mawla, and Vinci.

    On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0192-21.

    Theodore B. Campbell argued the cause for appellant.

    Kyle J. Costa argued the cause for respondent, (Port Authority Law Department, attorneys; Kyle J. Costa, on the brief).

PER CURIAM

Appellant Kenneth Poli appeals from the March 18, 2022 order denying his motion to enforce litigant's rights, and August 5, 2022 order granting summary judgment in favor of defendant Port Authority of New York and New Jersey ("PANYNJ") for failure to serve a notice of claim as required by N.J.S.A. 32:1-163. Based on our review of the record and the applicable principles of law, we affirm.

In April 2014, Poli was hired by PANYNJ. He received annual job performance reviews conducted by his manager, Philip Finamore. Prior to 2018, Poli's annual job performance was rated as having "met or exceeded expectations" with corresponding numerical ratings of at least three out of a possible five. In his annual performance review for 2018, Poli received a numerical rating of two out of five, categorized as "below expectations." Poli complained about his performance rating but was told the review could not be changed.

On July 25, 2019, counsel for Poli, Theodore Campbell, Esq., sent a letter to the PANYNJ Director of Security Operations, Michael DeGidio, Executive Advisor to the General Counsel, Caroline Ioannou, and Chief of Human Capital, Marylee Hannell. Campbell wrote that he was retained "to address Poli's 2018

performance review, after he was informed . . . that there is no current policy in place for him to dispute the performance review rating."

The letter explained "Poli . . . believe[d] his relationship with . . . Finamore . . . may have suffered in part due to [Poli's] report to the appropriate authority about some irregularities for [a construction project at JFK International Airport] in July of 2017, which was subsequently investigated and substantiated by the [PANYNJ Office of Inspector General ("OIG")] . . . ." The letter continued, "[i]f [Poli's] reporting to the [O]IG in any way impacted his performance review . . . [Poli's] requested transfer to a different [d]epartment merits consideration." The letter specifically requested consideration of Poli's "request for a review and an adjustment of his 2018 evaluation, along with [his] request for a transfer to a different [d]epartment."

The OIG commenced an investigation of the issues raised in Campbell's letter. On August 27, 2019, Ioannou sent an email to OIG investigative counsel Inna Spector, and senior counsel Dyana Lee, with the subject line "Privileged & Confidential – Litigation Hold Process – Anticipated Litigation by [Poli]." In September 2019, Poli and Campbell met with Spector and Lee to discuss Poli's allegations.

3

On January 10, 2020, the Inspector General sent Campbell a letter advising him the OIG investigation was complete and the OIG "determined . . . Poli's 2018 [e]valuation was sufficiently supported by documented evidence of his work performance and completely unrelated to his limited involvement with the 2017 OIG investigation." The OIG "confirmed that . . . Poli was neither the complainant in the 2017 OIG[] [i]nvestigation nor a source of any confidential or protected information." The OIG dismissed the complaint and terminated the investigation.

In February or March 2020, Poli was advised in his annual performance review for 2019 he received a numerical rating of three out of five, categorized as "met expectations."

On March 25, 2020, Poli received a copy of an August 8, 2018 memorandum summarizing the findings and conclusions of the 2017 OIG investigation. The memorandum did not mention Poli by name, title, or other description. The report identified PANYNJ fire chief, Thomas Wieczerak, as the individual who requested the OIG conduct the investigation.

On November 5, 2020, Campbell sent a letter to OIG Acting Inspector General, Michael Farbiarz, disputing the OIG's determination that Poli was not "involve[d] as a whistleblower" in the 2017 OIG investigation because he

4

provided Wieczerak with underlying information relating to one of the issues included in the investigation. The letter requested a meeting "to discuss this apparent contradiction in light of New Jersey's Rule[] of Professional Conduct (3.3[]) regarding a lawyer's obligation for candor to a tribunal along with the OIG's perspective in response to [Campbell's] observations." On November 16, 2020, Campbell sent another letter to Farbiarz reiterating his request for a meeting. The letter closed, "[i]f you elect not to meet with us . . . I will advise my client accordingly."

Poli contends that in December 2020, Campbell sent a letter, incorrectly dated July 9, 2020, to the Chief Ethics and Compliance Officer, Debra Torres, in which he summarized Poli's claim that he was a whistleblower because he provided information to Wieczerak, who then reported the information to the OIG. Campbell wrote, "[s]ince [I] . . . raised concerns about [the OIG's] investigative findings and candor relative to . . . Poli's status in this matter, [he] would like [Torres's] [d]epartment to investigate and address this issue . . . ." The letter concluded Poli "would like an in-house resolution before resorting to an outside [a]dministrative [j]udicial remedy."

On December 22, 2020, Campbell wrote to Hannell requesting she "clarify immediately[] the pending nature of [Poli's] 2018 performance evaluation to a

definitive grade pursuant to your policies. We have requested, and now reiterate, a rating of [three] is warranted, which is in line with [Poli's] prior and subsequent performance ratings." The letter requested Hannell's "prompt response."

On January 13, 2021, Poli filed his complaint in this action. On March 26, 2021, he filed an amended complaint. Poli asserted causes based on violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14 ("CEPA"), violation of the Pierce[1] doctrine, violation of contract (Woolley[2] doctrine), interference with economic advantage, the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50 ("NJLAD"), fraud, and defamation. Poli demanded "compensatory damages, including lost wages, punitive damages, [and] benefits, together with interest."

On May 14, 2021, PANYNJ filed an answer to the amended complaint. PANYNJ asserted failure to state a claim as an affirmative defense but did not assert an affirmative defense based on failure to serve a notice of claim.

---

[1] Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980).

[2] Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, modified, 101 N.J. 10, (1985).

A-0117-22

During discovery, Poli filed a motion to compel discovery, including production of the OIG investigation file relating to Poli's allegations, and defendant filed a cross motion for a protective order. On October 29, 2021, the court entered an order granting in part and denying in part both motions. The court did not rule on defendant's privilege claims, but ruled the OIG investigation file would be "produced with appropriate redactions per . . . Campbell's representations today. So that would be names and identifiers and then if there's other follow-up discovery request[s] based on that, then I'll leave that to another day."

A dispute arose over defendant's redactions of the OIG file and Poli filed a motion to enforce the October 29, 2021 order. On March 18, 2022, the court denied Poli's motion because the court did not previously order disclosure of the unredacted OIG file, as Poli alleged, and because Poli did not demonstrate defendant's assertions of privilege lacked merit.

On June 21, 2022, defendant moved for summary judgment arguing Poli failed to serve a notice of claim as required by N.J.S.A. 32:1-163, and Poli's causes of action based on CEPA, NJLAD, and the Pierce doctrine could not be asserted against defendant. Poli opposed the motion, arguing he substantially complied with the notice of claim requirement. On August 5, 2022, the court

7

heard oral argument. The same day, the court entered an order granting the motion supported by a written opinion. On August 9, 2022, the court issued an amended written opinion.

The court rejected Poli's argument that he substantially complied with the notice of claim requirement.[3] Applying the standard for substantial compliance set forth in Galik v. Clara Maass Med. Ctr., 167 N.J. 341 (2001), the court found Poli failed to demonstrate he "alert[ed] [d]efendant to any of the claims filed in [his] amended complaint." The court also found Poli did not establish he took a series of steps to comply with the statute, generally complied with the purpose of the statute, or had a reasonable explanation why he did not strictly comply with the statute. As to the fraud claim, the court additionally determined the alleged notice was not served at least sixty days before Poli filed suit.

On appeal, Poli argues: (1) the court erred by rejecting his claim of substantial compliance as to his "whistleblower" and "fraud" claims; (2) the court erred by failing to consider and apply the doctrine of equitable estoppel to

---

[3] Because Poli only addressed his CEPA, NJLAD, and fraud claims in opposition to the motion, the court deemed the motion unopposed as to all other claims. The court, however, noted Poli's "Wool[l]ey doctrine" claim also failed on the merits for failure to serve a notice of claim.

preclude defendant from raising the notice of claim defense; and (3) the court erred by failing to enforce the October 29, 2021 discovery order.[4]

Appellate courts review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73 (2022); Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 655 (2022). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Pursuant to these principles and having considered the arguments raised on appeal, we affirm substantially for the reasons set forth in the court's thorough and well-reasoned March 18, 2022, and August 9, 2022 written opinions. We add the following comments.

---

[4] Poli does not address his causes of action based on the Pierce doctrine, violation of contract (Woolley Doctrine), interference with economic advantage, NJLAD, or defamation. Therefore, they are waived. Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983) (holding issues not briefed beyond conclusory statements need not be addressed). Those claims, however, also fail on the merits as discussed herein.

The court correctly analyzed and applied the doctrine of substantial compliance. To demonstrate substantial compliance a litigant must establish:

> the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim[;] and (5) a reasonable explanation why there was not a strict compliance with the statute.
>
> [Galik, 167 N.J. at 353.]

"Establishing th[e]se elements is a heavy burden." Id. at 357. "The substantial compliance doctrine 'operates "to prevent barring legitimate claims due to technical defects."'" H.C. Equities, LP v. Cty. of Union, 247 N.J. 366, 386 (2021) (quoting Cnty. of Hudson v. Dep't of Corr., 208 N.J. 1, 21 (2011)).

N.J.S.A. 32:1-163 requires:

> any suit, action or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefor shall have accrued, and upon the further condition that in the case of any suit, action or proceeding for the recovery or payment of money, prosecuted or maintained under this act, a notice of claim shall have been served upon the Port Authority by or on behalf of the plaintiff or plaintiffs at least sixty days before such suit, action or proceeding is commenced.

The notice of claim must provide:

> (1) the name and post-office address of each claimant and of [their] attorney, if any, (2) the nature of the

A-0117-22

claim, (3) the time when, the place where and the manner in which the claim arose, and (4) the items of damage or injuries claimed to have been sustained so far as then practicable.

[N.J.S.A. 32:1-164.]

The purpose of the statute is to provide "adequate time for investigation, reasonable opportunity for the preparation of its defense, and reasonable opportunity to effect a settlement before the institution of suit." Zamel v. Port of N.Y. Auth., 56 N.J. 1, 7 (1970). In the context of a similar notice of claim requirement under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to -12.3, our Supreme Court held the

> Legislature clearly envisioned that a claimant would disclose to a public entity its tort causes of action in a single document that provides clear notice of its claim, not in a series of incomplete communications that must be considered together in order to infer that a claim may be filed.
>
> [H.C. Equities, LP, 247 N.J. at 387-88.]

"[T]he public entity [cannot be] required to analyze multiple communications and determine whether, viewed in the aggregate, they reveal an intent to sue." Id. at 387.

The record in this case does not demonstrate a lack of prejudice to defendant, a series of steps taken to comply with the statute involved, general

compliance with the purpose of the statute, or reasonable notice of petitioner's claim, as required by Galik. 167 N.J. at 353. Poli's numerous communications with different individuals at different times are inadequate to establish substantial compliance. The relevant statutes require "a notice of claim" and refer to "the notice of claim." N.J.S.A. 32:1-163, 164. As the Supreme Court held in H.C. Equities, LP, the Legislature clearly intended the notice would be communicated in a single comprehensive document, not in a series of incomplete communications. 247 N.J. at 387-88.

Nowhere in any of the letters did Poli notify defendant of his intention to file a lawsuit. Rather, the letters requested meetings to resolve his complaints "in-house." Moreover, Poli's letters did not alert defendant to any of the claims asserted in the amended complaint. The July 25, 2019 letter sought only "to address Poli's 2018 performance review" and his "request for a transfer to a different [d]epartment." The November 5, 2020 letter disputed the OIG's determination that he was not a whistleblower and requested a meeting "to discuss [that finding] in light of [RPC 3.3] regarding a lawyer's obligation for candor to a tribunal along with the OIG's perspective in response to [counsel's] observations."

The November 16, 2020 letter reiterated Poli's request for a meeting and stated "[i]f you elect not to meet with us . . . I will advise my client accordingly." The first letter sent in December 2020 reiterated Poli's claim that he should be deemed a whistleblower and stated Poli "would like an in-house resolution before resorting to an outside [a]dministrative [j]udicial remedy." The December 22, 2020 letter related only to Poli's request for a revision to his 2018 performance evaluation and requested a "prompt response."

These letters do not demonstrate Poli advised defendant that he intended to assert claims based on CEPA, NJLAD, breach or violation of contract, interference with economic advantage, the Pierce doctrine, fraud, or defamation. In addition, the letters did not reference any of the damages sought in the lawsuit, including compensatory damages, lost wages, lost benefits, or punitive damages.[5] In fact, the only demands addressed in his letters—revision of his 2018 performance evaluation and transfer to a different department—are not even included as demands in the amended complaint.

Finally, Poli failed to provide a reasonable explanation why there was not a strict compliance with the statute as required by Galik. 167 N.J. at 353. Poli

---

[5] During argument before us, counsel stated Poli is not making a claim for lost wages. That claim is, however, asserted in the amended complaint.

essentially contends he did not strictly comply with the statute because he was not aware of the notice requirement. Generally, "ignorance of the law . . . will not excuse failure to meet the filing deadline . . . ." Hyman Zamft & Manard, LLC v. Cornell, 309 N.J. Super. 586, 593 (App. Div. 1998). If an attorney's negligence "is the sole basis for the late notice, the claim against the public entity will be lost." Bayer v. Twp. of Union, 414 N.J. Super. 238, 259 (App. Div. 2010).

Poli's reliance on the August 27, 2019 email Ioannou sent to Spector and Lee, with the subject line "Privileged & Confidential—Litigation Hold Process—Anticipated Litigation by [Poli]," does not lead us to a different result. As we have discussed at length, the record does not support Poli's substantial compliance argument. The fact that defendant initiated a litigation hold process after receiving Poli's July 25, 2019, letter does not establish Poli substantially complied with the notice of claim requirement. The doctrine of substantial compliance requires much more than merely raising the possibility of some unspecified future litigation. We are satisfied the court determined correctly Poli failed to meet the heavy burden of establishing substantial compliance with the notice of claim requirement.

Poli's argument that defendant waived the notice of claim defense by failing to assert it as an affirmative defense lacks merit. While it might be a preferable practice to assert failure to serve a notice of claim as an affirmative defense in cases such as this, omitting it will not result in waiver. In <u>Port Auth. of New York & New Jersey v. Airport Auto Services, Inc.</u>, 396 N.J. Super. 427, 430 (2007), we held that "failure to comply with the notice of claim requirement [set forth in N.J.S.A. 32:1-163] withdraws the consent to suit, and thus, deprives the court of subject matter jurisdiction." (internal quotation omitted) (quoting <u>Port Auth. of N.Y. & N.J. v. Barry</u>, 833 N.Y.S.2d 839, 840 (N.Y. Sup. App. Term 2007)). Lack of subject matter jurisdiction "may be raised at any time," and cannot be waived. <u>Lall v. Shivani</u>, 448 N.J. Super. 38, 48 (App. Div. 2016). Because failure to serve a notice of claim deprives the court of subject matter jurisdiction, defendant did not waive the defense by failing to assert it as an affirmative defense.

Poli's argument that defendant is equitably estopped from asserting the notice of claim defense is not persuasive. The doctrine of "[e]quitable estoppel is 'rarely invoked against a governmental entity.'" <u>Meyers v. State Health Benefits Comm'n</u>, 256 N.J. 94, 100 (2023) (quoting <u>Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown</u>, 162 N.J.

361, 367 (2000)).  However, "the doctrine of estoppel may be invoked against a municipality to prevent manifest wrong and injustice."  Ibid.  (quoting Gruber v. Mayor & Twp. Comm. of Raritan Twp., 39 N.J. 1, 14 (1962)).

Poli contends defendant should be estopped from asserting the notice of claim defense because defendant did not alert him to the notice requirement by asserting it as an affirmative defense, and affirmatively concealed the requirement by not placing it on its website.  As discussed previously, defendant was not required to assert lack of subject matter jurisdiction as an affirmative defense.  Poli's claim that defendant concealed the requirements of the statutes by not placing the statutes on its website is entirely without merit.  Statutes are publicly available and cannot be concealed.  Poli failed to demonstrate a manifest wrong or injustice that must be prevented.  The doctrine of equitable estoppel, therefore, is inapplicable.

We are not convinced the court erred by failing to compel the production of documents in response to Poli's motion to enforce litigant's rights.  We "generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law."  State v. Brown, 236 N.J. 497, 521 (2019) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

A-0117-22

Here, Poli moved to enforce the court's October 29, 2021 order and compel the production of certain documents deemed privileged or otherwise protected from discovery by defendant. On March 18, 2022, in a comprehensive written opinion, the court found Poli misconstrued its October 29, 2021 order, and determined Poli failed to show the information withheld from production should be produced. We discern no reason to conclude the court abused its discretion by denying Poli's motion and will not disturb the March 18, 2022 order on appeal.

To the extent we have not otherwise addressed appellant's arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17